# Richmond.

## BORLAND v. BARRETT.

### January 19, 1882.

1. ASSAULT AND BATTERY—*Vindictive damages—Instructions.*—Right to recover vindictive damages is not confined to cases of actual malice.

2. Where the assault is of grievous or wanton nature, manifesting wilful disregard of the rights of others, actual malice need not be shown to entitle the aggrieved party to exemplary or vindictive damages.

3. Every unlawful act done wilfully, to the injury of another, upon slight provocation, is presumed by the law to be malicious.

4. An instruction which asserts that if defendant, in assaulting plaintiff, had neither malice nor deliberate purpose to injure, the measure of damages is compensatory, and not vindictive, is erroneous.

5. The jury in such case may give not only such damages as they think necessary to compensate the plaintiff, but also such as will operate as a punishment to the defendant and tend to deter him and others from similar outrages.

6. If an instruction does not correctly expound the law, the general rule is that the court may refuse to give it, and is under no obligation to give any other instruction in its place.

7. After refusing defendant's instruction the court said to the jury: "The whole question and scope of damages are for the jury alone to determine." This was not error. Had the court laid down any specific rule it must have said: "The jury are authorized to give vindictive damages, taking into consideration all the circumstances of insult and aggravation attending the case."

8. IDEM—*Excessive damages.*—In this case, as the record does not disclose a single mitigating circumstance in favor of the defendant—

HELD:

The damages are not excessive; but if they were, the verdict would not be disturbed, unless it showed that the jury were actuated by passion, prejudice, or undue influence, or unless the amount be *grossly* excessive.

9. JURORS—*Tampering, etc*—Highly reprehensible for the parties to converse with the jurors, and however innocent, it is calculated to impair

confidence in the impartiality of verdicts, and should be frowned upon by the courts. But casual conversations between parties and jurors during recess of court have never been considered sufficient of themselves to set aside a verdict.

10. JURORS—*Non-payment of capitation tax.*—The point that one of the jurors had not paid his capitation tax was not raised until after verdict which is met by *Poindexter's* case, 33 Gratt. 766.

Error to judgment of corporation court of Norfolk city in action of trespass *vi et armis,* wherein A. D. Barrett is plaintiff and Euclid Borland is defendant. The opinion of the court fully states the facts and the instructions asked for and points raised. Verdict for plaintiff for $1,000 damages and judgment accordingly. From this judgment defendant obtained a writ of *supersedeas.*

*T. R. Borland* and *Godwin & Crocker,* for the appellant.

1. The court below erred in refusing the instructions asked for. 2 Gr. Ev., § 253; *Peschine* v. *Shepperson,* 17 Gratt. 484; *Parsons* v. *Harper,* 16 Gratt. 79; *Donnell* v. *Sanford,* 11 La. Ann. 645.

2. In giving the instructions it gave.

3. In rejecting defendant's instruction without giving to the jury an explanation for so doing. *Circle* v. *Womack,* 29 Gratt. 192.

4. In refusing a new trial.

5. In holding the verdict not excessive.

6. In holding that the juror who had not paid his poll-tax for the year previous was a competent juror.

*Burroughs & Bro.,* for the appellee.

STAPLES, J., delivered the opinion of the court.

This was an action of trespass, assault and battery, brought in the corporation court of Norfolk city. The case was tried by jury, who rendered a verdict of $1,000 damages in favor of the plaintiff. This verdict was affirmed by the court, and judgment given against the defendant, who applied for and obtained a writ of error and *supersedeas* from one of the judges of this court.

In order to understand the errors relied upon to reverse this judgment, it is necessary simply to allude to some of the evidence adduced on the trial. It appears that the defendant and his wife, in the year 1878, were boarders at the Atlantic Hotel, in the city of Norfolk. In the summer of that year they went to the mountains, and did not return until the fall season. Upon leaving the hotel the defendant did not reserve the seats usually occupied by himself and wife at one of the tables in the dining-room, and, according to the rules of the hotel, these seats were free to be assigned to any other persons. In July, 1878, the plaintiff became a boarder at the hotel, and the seat which had been formerly occupied by the wife of the defendant was assigned to the plaintiff, and was occupied by him without interruption and without question during the summer and fall months. Upon his return to the hotel, however, the defendant claimed the seat, and demanded through the head waiter in the dining-room it should be vacated in behalf of his wife.

The plaintiff, it seems, was not informed of the previous occupation of the seat by the defendant's wife, or of any of the circumstances connected with it, and when asked by the head waiter if he would change, declined to do so. The defendant, according to his own statement, was not aware that the seat had during his absence been assigned to the plaintiff. When, therefore, he saw the latter occupying the seat at the table, he took him to be some transient guest who had just arrived by one of the trains, and

he requested the plaintiff to take the next seat and give his wife her seat. The plaintiff replied that it was his seat; that he had had it since July, and he preferred to retain it. The defendant said that if time were to be counted, his wife had occupied the seat the winter before. This was the entire conversation which passed between the parties at that time. The defendant further states, he did not see the plaintiff again till the morning of the difficulty, when approaching the breakfast table he saw the plaintiff in the seat. He said to the plaintiff: "I see you have my wife's seat again. Will you please move to the next seat and give her seat to her?" He looked up to me in a threatening manner and said, "No." I saw there was going to be a difficulty, and I concluded at once I had better strike the first blow, and I seized a Worcestershire sauce bottle and struck him over the head with it. He immediately arose from his seat, and seizing a plate with both hands, lifted it in the act to strike me. I seized a chair, and raised it, when parties interfered, and that ended the matter.

This is the defendant's account of the transaction. According to other testimony in the cause, the assault was a very violent one, one of the witnesses describing it as "a very ugly scene."

The bottle was broken by the blow, and the plaintiff was lead bleeding from the dining-room. The defendant's version of the affair has been given because he is entitled to the benefit of it, in considering the instructions asked for by his counsel. Upon his own showing the attack was without a circumstance of justification.

The plaintiff looked at him in a threatening manner, as he supposed. He saw there was going to be a difficulty, and concluded he would strike first. This is his sole excuse. He asked no explanation, he gave none. He had no sort of claim to the seat, as he ought to have known. He

was utterly in the wrong in every particular. Carried away by his angry passions, he made a wanton and unprovoked attack on the plaintiff, forcing him to submit to the humiliation of receiving in public a gross insult and indignity, or having an affray which might have endangered the lives or the safety of the guests of the hotel.

What is here said is intended to apply for the motion for a new trial on the ground of excessive damages; but in this connection, more particularly to the instruction asked for by the defendant. That instruction is as follows:

"The court instructs the jury that if they believe from the evidence that the defendant, in the assault made upon the plaintiff, was actuated by no motive of malice or deliberate design to injure, but acted under the heat of blood and the impulse of the moment, the measure of damages is compensatory and not vindictive, and that he, defendant, is only liable to such damages as result from loss of time and labor, expenses of medical services, bodily pain and suffering, and diminished capacity to work, consequent upon the injury."

This instruction was refused, and we are now to consider whether the court erred in so doing.

It will be perceived that the instruction assumes that to warrant a verdict for exemplary damages the jury must be satisfied that the assailant was actuated by malicious motives in making the assault, or that he had a deliberate design to injure the plaintiff. In the first place, the proposition, as asserted, was well calculated to mislead the jury; for, in a legal sense, every unlawful act, done wilfully or purposely, to the injury of another, upon slight provocation, is as against such person malicious, and the law so presumes. And if it be conceded that the defendant may by testimony rebut this presumption, still in this case there is not a scintilla of evidence even tending to show the absence of the malicious motive which the law infers

from a wanton and unprovoked assault. And this court has again and again declared that the trying court is not warranted in giving an instruction when there is no evidence to sustain it.

It may be true that the defendant acted in heat of blood; it was, however, "heat of blood" without justification or excuse. The violent assault made by him was altogether disproportioned to the supposed provocation. No man wantonly striking another with a weapon calculated to inflict damage can be heard to say that his purpose was not to injure, and an instruction based upon that hypothesis would be well calculated to mislead the jury.

It is to be further observed the right to recover exemplary damages is not confined to cases of actual malice. Whenever the assault is of a grievous or wanton nature, manifesting a wilful disregard of the rights of others, actual malice need not be shown to entitle the aggrieved party to exemplary damages. Whilst, therefore, the existence of malice may be shown in aggravation of such damages, its absence does not defeat the right to their recovery. 2d Sedgwick, 26, 28, on Torts, 227.

The instruction, however, asserts that if the defendant had neither malice nor deliberate purpose to injure, the measure of damages is compensatory and not vindictive, and the defendant is bound only for such damages as result from loss of time and labor, expense of medical services, and bodily pain and suffering, and diminished capacity to work consequent upon the injury.

It will be perceived the instruction ignores the right of the plaintiff to reparation for the indignity and insult to his feelings which may have resulted from the time and manner of the attack. In *Merest* v. *Harvey*, 5 Taunton, 442, it appeared that whilst the plaintiff was shooting on his own estate the defendant forced himself on the premises and used very insulting language, the jury found a verdict

for £500 damages. Upon a motion for a new trial, Gibbs, Chief Justice, said: "I wish to know, in a case where a man disregards every principle which actuates a gentleman, what is to restrain him except damages? Suppose a gentleman had provided a walk in his paddock before his window, and that a man intrudes and walks up and down before the window of his house, and looks in whilst the owner is at his dinner, is the trespasser to be permitted to say 'There is a half a penny for you, which is the full extent of all the mischief I have done?' Would that be a compensation? I cannot say that it would be."

The learned chief-justice then mentioned a case where the jury gave £500 damages for merely knocking a man's hat off, and the court refused the new trial. In *Sullidge* v. *Wade*, 8 Wile. 18, Bathurst, Judge, said: "In actions for assaults and the like, the circumstances of the time and place, when and where the insult is given, require different damages, as it is a greater insult to be beaten upon the Royal exchange than in a private room." And even Mr. Greenleaf, who has universally opposed the doctrine of vindictive or purative damages, concedes, in actions of tort, the jury are not confined to the actual pecuniary damage sustained by the plaintiff, but may take into consideration the motive of the defendant, the insulting character of his assault, and all the circumstances of aggravation and outrage attending the act. 2 Green., § 82.

Such damages, although sometimes denominated vindictive, are in their nature compensatory as much as those given for bodily pain, loss of time, and expense incurred. The modern authorities go further, and hold where elements of malice enter into the commission of the offence, the jury may give not only such damages as they think necessary to compensate the plaintiff, but also such as will operate as a punishment to the defendant, and tend to deter him and others in like cases from similar outrages. Fuller on Damages, 615; 2 Sed. 324, notes.

This doctrine, though questioned by judges and writers, seems to be too firmly settled by a long train of cases to be now called in question. It is, perhaps, needless to remark that the instruction asked for by the defendant is in conflict with the views here presented, and was, therefore, properly refused by the court.

It has been said, however, that if the instruction was erroneous, the court ought to have modified it, and granted it as modified. It has been held, in a number of cases, where the refusal to give an instruction as asked for is calculated to mislead the jury, it is the duty of the court to correct it and give it in its corrected form. It is equally true, however, that the rule in question cannot impose upon the court the duty of modifying or correcting every erroneous instruction which may be asked. As the general rule, if the instruction does not correctly expound the law, the court may refuse to give it, and is under no obligation to give any other instruction in its place. *Rosenbaum* v. *Weeder, Johnson & Co.*, 18 Gratt. 785, 799. The instruction asked for by defendant's counsel did not admit of any modification. As has been already seen, it was fundamentally erroneous in the doctrines asserted, and was therefore very properly unconditionally rejected.

The court, however, did say to the jury, after refusing the defendant's instruction, "that the whole question and scope of damages were for the jury alone to determine." We think that in this there was no error. We do not mean to say that in every case the jury may fix a measure of recovery without reference to the opinion of the court. On the contrary, it is the province and duty of the judge, if required, to expound the law by which the jury are to be governed in framing their verdict.

In this case, however, had the court undertaken to lay down any specific rule, it must have said: the jury were authorized to give vindictive damages, taking into consid-

eration all the circumstances of insult and aggravation attending the case.

And such was the effect of the declaration of the court to the jury, and was, no doubt, so understood by them. If it be admitted that the court might. and ought to have gone further in defining the elements which constitute the measure of recovery, the failure so to do will not constitute such error as would warrant this court in setting aside a just and proper verdict.

It is insisted, however, that the damages are excessive, and a motion to set aside the verdict on that ground was made in the court below. This branch of the subject has been so fully considered in connection with the instructions it is scarcely necessary to say more on the subject. The bill of exceptions taken by the defendant is a certificate of the evidence merely, and this court, in acting upon the motion for a new trial must, upon familiar principles, discard all the testimony of the defendant. It is, however, not at all material in this case whether we consider all or a part of the testimony.

It does not appear there is a single mitigating circumstance in favor of the defendant. According to his account, he made the assault, not because he was provoked by the "threatening look" of the plaintiff, but because he saw there was going to be a difficulty, and he concluded at once that he had better strike the first blow.

The testimony of the other witnesses shows that there was not the slightest foundation for any such apprehension, and that the defendant, in making the assault, acted the part of a passionate man, easily excited by very slight and trivial causes. The attack was the more unjustifiable because made in a public place, and therefore the more calculated to humiliate the plaintiff, and to excite terror and alarm among the guests of the hotel.

If, however, we were of opinion that the damages are excessive, it does not follow we could therefore interfere

with the verdict. The wisdom of the law has constituted the jury, and not the court, the proper tribunal for the assessment of damages in cases like the present, and their verdict will not be disturbed unless it shows that the jury were actuated by passion, prejudice, or undue influence, or unless the amount is grossly excessive, upon any just view of the evidence which might have been taken by the jury. No rule of law is, perhaps, more firmly established than this, both by the English and American cases. *Peshine* v. *Sheppardson*, 17 Gratt. 488 ; *Turner* v. *Donahoe*, 9 Wash. 228 ; 2 Sed. on Measure of Damages, 334 ; Moaks. Underhill on Torts, 72, 226 ; 2 Addison on Torts, p. —. The court, therefore, does not err in refusing to set aside the verdict upon the ground of excessive damages.

The motion for a new trial was, however, based upon the further ground of misconduct in two of the jurors. The charge is that the plaintiff, on the evening after the adjournment of the court, held private conversation with these jurors. A witness examined stated that he saw James and Hoy (the two jurors) in conversation with the plaintiff ; knowing they were jurors, the witness' attention was drawn to the fact that they were talking to the plaintiff in the suit.

One of the jurors thus referred to was also examined, and he stated that his conversation with the plaintiff had no reference whatever to the suit. He further stated he was present whilst James, the other juror, was talking to the plaintiff. The witness did not hear what was said, his attention not being called to what they were talking about.

This is the whole case made by the defendant to sustain the charge of misconduct. There is no doubt that the conduct of the plaintiff in holding any conversation with the jurors whilst his suit was under consideration was highly reprehensible. He had no business with the jury except in court. Familiar intercourse and conversation between

parties interested in the event of the suit and the jury, however innocent, destroy confidence in the impartiality of verdicts, and should be frowned upon by the courts. It frequently happens, however, in civil cases, during the recess of the court, parties and jurors are casually thrown together at hotels, on the highway, and other public places, and converse upon indifferent topics without a thought of impropriety in so doing. These conversations have never been considered as sufficient of themselves to set aside a verdict. It is so laid down by Lord Hale, and by the authorities with but few exceptions. Hale P. L. Cs. p. 308.

Such being the rule, the court will not presume misconduct from the mere fact of an unexplained conversation with one of the jurors. If the losing party has reason to believe that the jury have been tampered with, or some undue influence brought to bear upon them, the proper course is for him to bring the matter before the presiding judge by some proper proceeding, and compel a full disclosure of the conduct and the conversation of which complaint is made.

In this case the learned judge of the circuit court seems to have been content with the examination of one of the jurors. Upon that examination he was satisfied there was no valid ground to set aside the verdict. He was acquainted with the parties, the jury, and the surrounding circumstances. He was therefore more competent to form a correct opinion on the subject than this court could possibly be. In all this class of cases, where application for a new trial is based upon mere circumstances of suspicion arising out of the conduct of the party, the whole question is addressed very much to the sound discretion of the judge presiding at the trial, and that discretion an appellant court is not inclined to reverse unless the error is palpable. We think, therefore, this ground for a new trial in the present case is not well taken.

With respect to the charge of partiality and the existence of a preconceived opinion on the part of one of the jury, based upon declarations alleged to have been made by him, it is sufficient to say the charge and the declarations were denied by the juror upon examination after the verdict was rendered. The judge of the corporation court had both the witness and the juror before him. He was satisfied the objection was groundless, and we see no cause for any interference with the conclusion to which he arrived.

The only remaining error assigned is, that one of the jurors was delinquent in the payment of his capitation tax. This point was not raised till after the verdict was rendered, and is met by the decision in Poindexter's case, 33 Gratt.

Upon the whole case we are of opinion the judgment of the corporation court is correct, and should be affirmed.

AFFIRMED.