Kennedy v. Holladay.

KENNEDY, *Appellant*, v. HOLLADAY.

DIVISION ONE.

1. _Malicious Prosecution: GRAND JURORS : EVIDENCE. The depositions of grand jurors as to statements made before the grand jury by defendant in a suit for malicious prosecution are inadmissible in evidence on the trial of said cause.

2. Practice: BILL OF EXCEPTIONS : EVIDENCE. Evidence excepted to on the trial must be so set out in the bill of exceptions as to show its illegal and prejudicial character, or the appellate court will not review its admission.

3. —— : JURY : MISCONDUCT OF PARTY. A verdict of a jury will not be disturbed because of communication or other improper act of the successful party with a juror, where it appears that the act was merely accidental, or inadvertent, and was done without any improper design, and that it had no improper influence on the mind of the juror.

4. —— : —— : DISCRETION OF TRIAL COURT. The question of granting a new trial because of such improper conduct rests largely in the discretion of the trial court, and its action in denying the new trial will not be disturbed, in the absence of evidence showing it was clearly wrong.

*Appeal from Madison Circuit Court.*

AFFIRMED.

*J. Perry Johnson* for appellant.

(1) The circuit court in the trial of the cause should have admitted the evidence of the two grand jurors offered by the plaintiff, appellant here, to show what the testimony of the defendant was, on which the indictment was found, the reasons for secrecy having ceased as the evidence was sought after the state had entered a *nolle prosequi* in the criminal prosecution. *Hendekoper v. Cotton*, 3 Watts, 56 ; *Dreux v. Domec*,

Kennedy v. Holladay.

18 Cal. 83; *Sharpe v. Johnson*, 76 Mo. 660; R. S. 1879, sec. 1793. (2) The circuit court to have been consistent in its rulings should not have admitted the testimony of the respondent Holladay, as to what he testified to before the grand jury, there being the same reason for secrecy as to the witness before the grand jury as to the grand jurors themselves. There being no reason in either case for the rule, after the defendant had been arrested and given bail, or been discharged, as in this case. R. S. 1879, sec. 1775; R. 'S. 1889, sec. 4070; *Barrett v. Chouteau*, 94 Mo. 18; *Tindle v. Nichols*, 20 Mo. 328. (3) The circuit court having permitted the testimony of the defendant Holladay, as to what he had testified to before the grand jury, to go to the trial jury, should have admitted the testimony of the grand jurors on the same subject to go to the jury in rebuttal,—the party indicted having been arrested, arraigned, and the indictment *nolle prossed*, there was no longer any reason for the rule closing the mouth of either grand jurors, or witnesses; but they both should have been permitted to testify in the trial of the cause. *Com. v. Mead*, 12 Gray, 166; *Dana v. Tucker*, 4 Johns. 487; *Tenney v. Evans*, 13 N. H. 462; *State v. Ayer*, 23 N. H. 301; *Shattuck v. State*, 11 Ind. 473; *State v. Wood*, 53 N. H. 434. (4) It is the duty of trial courts to guard with jealous care the petit or trial jury from interference, or outside influence of any kind, and the fact that the defendant had treated some of the jurors, while engaged in the trial, to oyster supper, made a trade for property with another to be consummated after the trial, entered into an agreement to hire another of the jurors, was, even in the absence of any positive intent to influence the jury, of such doubtful propriety, and of such dangerous tendency, that the circuit court should have granted the appellant a new trial. *Walker v. Walker*, 11 Ga. 203; *Walker v. Hunter*, 17 Ga. 364; *Madden v. State*, 1 Kan. 340; *Knight v. Freeport*, 13 Mass. 218; *Allen v. Aldrich*, 29 N. H. 63; *Tucker v.*

*South Kingston*, 5 R. I. 558. (5) The trial court should have granted appellant a new trial in this case, on the one point, that the respondent did intermeddle with the jury, as shown by affidavits in support of motion for new trial, as well as those in contradiction. Whether he did so for the purpose of influencing their verdict or not, that his intermeddling did prejudice the jury is clearly made out by the affidavits, as well as by the verdicts in the two preceding trials. *Vose v. Miller*, 36 N. W. Rep. 583.

*B. B. Cahoon, S. M. Chapman, Thos. Holliday* and *Carter & Weber* for respondent.

(1) The rule is fixed in this state that grand jurors cannot in actions of malicious prosecution testify concerning what occurred in the grand jury room, as to what testimony was or was not given. R. S. 1879, secs. 1791-2-3; *Bean v. Link*, 27 Mo. 260; *Tindle v. Nichols*, 20 Mo. 326; *Spratt v. State*, 8 Mo. 247. (2) A new trial will not be granted when it is evident the party applying for it can receive no benefit. *Ferguson v. Turner*, 7 Mo. 497; *O'Connor v. Duff*, 30 Mo. 595. (3) Whether a new trial should be granted because of the party treating jurors to refreshments does not depend alone upon the abuse presumed, or proved to have followed the treating, but also on the substantial justice of the case, as shown on the last trial of it. *McCarty v. McCarty*, 4 Rich. (S. C.) 599; Graham on New Trials, 66-85; *Pulaski v. Wand*, 2 Rich. 119; Thompson & Mer. on Juries, sec. 302. (4) Griffin and Worley testify that treating did not in the slightest degree affect their verdict; they were competent witnesses to testify in support of their verdict. Thompson & Mer., sec. 304; *State v. Underwood*, 57 Mo. 52; *Pratte v. Coffman*, 33 Mo. 77-8; 1 Greenleaf on Ev., sec. 252; *McMurdoch v. Kimberlin*, 23 Mo. App. 523; *Miller v. St. Louis City*, 5 Mo. App. 471; Hayne on New Trials,

sec. 74; 3 Graham & Waterman on New Trials, p. 1450. (5) It is necessary to warrant a new trial that the trial court be satisfied that an unjust verdict was occasioned by the matters complained of, and that the party has a just cause of action. R. S. 1879, sec. 3704. (6) Our statutes and decisions require judgments to be affirmed, though errors were committed on the trial, or irregularities occurred, provided the verdict is on the merits for the right party. R. S. 1879, sec. 3775; *Garesché v. Dean*, 40 Mo. 168; *Hunter v. Miller*, 36 Mo. 143; *Miller v. Newman*, 41 Mo. 409; *Whalen v. Railroad*, 60 Mo. 143; *Frick v. Railroad*, 75 Mo. 547. (7) Actions for malicious prosecution are not and should not be encouraged by courts; their tendency is to deter citizens from prosecuting crime. Townsend on Slander & Libel, 418; *Savelle v. Roberts*, Carth. 416; *Wanker v. Wykoff*, 7 Hun, 179; *Cardinal v. Smith*, 109 Mass. 158; *Hurd v. Shaw*, 20 Ill. 354; *Barrett v. Chouteau*, 94 Mo. 13. (8) Slight and trivial acts of impropriety on the part of jurors are not sufficient to disturb their verdict unless the complaining party can show he has been injured by such acts. *Paramore v. Linsdey*, 63 Mo. 67; *Compton v. Arnold*, 54 Mo. 147; *State v. Baber*, 74 Mo. 292; *State v. West*, 69 Mo. 401; *State v. Brown*, 64 Mo. 367. (9) There are no decisions holding that a verdict must be set aside because the winning party unintentionally and by inadvertence treated one or two of the jurors. On the contrary, the rule is that where there has been an accidental conversation or an inadvertent treating by the winning party, or by his attorney, not, however, to influence the jury, and there has been no other influence exerted, the verdict will not be set aside. *Vaughn v. Dotson*, 2 Swan (Tenn.) 348; *Morris v. Vivian*, 10 Mees. & Wels. 137; *Tupp v. Commissioners*, 2 Allen, 556; *Thompson's Case*, 8 Grattan, 657; *Hinton v. Southwick*, 17 Me. 303; *Goodnight v. McCausland*, 1 Yeates (Pa.) 372; *Coleman v. Moody*, 4 Hen. & Mun. 1; *Eakin v. Canal Co.*, 4 Zabr. 24; N. J. L. 538; *McCarty*

*v. McCarty*, 4 Rich. 594 ; *Koester v. Ottumwa*, 34 Ia. 41 ; *Rowe v. State*, 11 Humph. 491 ; *White v. Wood*, 8 Cush. 413 ; *Handley v. Call*, 30 Me. 9 ; *Jones v. Vail*, 30 N. J. L. 135 ; *Shea v. Lawrence*, 1 Allen, 167 ; *Sexton v. Leliverre*, 4 Cald. 11 ; *Wilson v. Abrahams*, 1 Hill, 207 ; *Ford v. Holmes*, 61 Ga. 410 ; *McElvaine v. Wilkins*, 12 N. H. 474 ; *Johnson v. Porter*, 2 Harr. (Del.) 325 ; *Everett v. Youells*, 4 Barn. & Adolph. 681 ; *Kellogg v. Wilden*, 15 John. 455.

BRACE, J.—This is an action for damages for malicious prosecution. Verdict and judgment for defendant. Plaintiff appeals. The evidence in the case is not preserved in the bill of exceptions.

The assigned errors relied on for reversal are, the refusal of the court to admit the testimony of two grand jurors ; the admission of statements made by the defendant before the grand jury, while giving in his testimony ; and the refusal of the court to grant a new trial on the ground alleged in the motion therefor, that pending the trial the jury were tampered with by defendant.

I. There was no error in the refusal of the court to permit the depositions of the two grand jurors, disclosing evidence given before the grand jury, to be read as evidence for the plaintiff. R. S. 1879, secs. 1791, 1793 ; *Beam v. Link*, 27 Mo. 261 ; *Tindle v. Nichols*, 20 Mo. 326 ; *State v. Thomas*, 99 Mo. 235.

II. In order that an appellate court may determine whether the trial court has committed error in the admission of evidence, the evidence must be set out in the bill of exceptions, so that it can be seen whether the evidence is admissible or not ; and, if inadmissible, whether the evidence is harmless, or of such a character as could have affected the result. The bill of exceptions should also show the time and manner in which objection thereto was made and exception taken, in order that the appellate court can see that the objection

was properly saved. In the absence of the evidence, and without any knowledge of the connection in which it was admitted, and how excepted to, it is impossible to tell whether the court committed reversible error in its admission, or whether a proper exception thereto was saved. Every presumption, being in favor of the correct action of the trial court, when parties undertake to overthrow that presumption the least that can be expected of them is that they bring the evidence here in respect of which they claim error was committed in its admission ; for without the evidence, and with no knowledge of the circumstances and connection in which it went before the jury, this court cannot do otherwise than refuse to reverse upon any such supposed error.

III. The main point relied upon for a reversal is the refusal of the court to grant a new trial upon the alleged grounds, that, pending the trial, three of the jurors, Pierce Worley, D. U. Griffin and John Wernecke, were tampered with by defendant for the purpose of influencing their verdict.

From the affidavits filed upon this issue the material facts seem to be about as follows :

The case was tried in Fredericktown, Madison county. The defendant lived and did business in Williamsville, Wayne county, about sixty miles distant. The trial seems to have been commenced on Friday, the thirtieth of September, 1887, and was concluded on Monday, the third of October, as appears from the record. The affidavit on the motion for a new trial would indicate, however, that the verdict was not returned until the fourth of October. The defendant was using, and in the habit of buying from time to time to be used, in his business a large number of mules and of employing a number of hired hands. On the twenty-sixth of September, John Wernecke, who had not then been summoned on the jury, and who was a stranger to the defendant, sought and obtained an introduction to him at Fredericktown for the purpose

of trying to sell him a pair of mules; he asked $250 for the mules; he had one of them in town, which defendant examined; the next day Wernecke brought in the other mule and defendant examined it, and told Wernecke he would buy the mules if he would bring both to town so that he could see them together, and the price was satisfactory. Wernecke agreed to bring them both to town; he was afterwards summoned on the jury, and afterwards brought both mules to town,— on the fourth of October,—when they agreed upon the price, and they were sold to the defendant for $235. Defendant paid Wernecke $10 on the trade, and he agreed to deliver the mules to defendant at Williamsville after defendant returned home. This sale was open and public, and the price agreed upon was the full and fair value of the mules. The case was not mentioned by either of them at either interview.

On the twenty-sixth of September, Pierce Worley, who had not then been summoned on the jury, and who was a stranger to the defendant, was introduced to the defendant as a good man and worker by defendant's brother-in-law. Worley sought employment of defendant for himself in defendant's mills, and for his wife also to do housework, and defendant told him if they would come (to Williamsville) he could give them employment, and agreed to do so in that event. The case was not mentioned between them, and there is nothing in the affidavits tending to show that when these transactions were had, on the twenty-sixth and twenty-seventh of September, either of the two jurors above mentioned had any reason to believe that the defendant had any case in court, or that they would be selected as jurors to try any case, or that defendant had reason to believe that his case would be tried at that term.

On the night of October 3, the court held a night session and adjourned about ten P. M.; just after adjournment, the defendant with several other parties came out of the courthouse and were standing in front

thereof, when one of the party named Carlin said to defendant: "I would like to have some oysters." The defendant replied, "Well, let's have some," and addressed another of the party named Lowrance, saying: "Uncle Davy, won't you have some oysters?" Lowrance said, "yes," then another of the party spoke up and said, "Why don't you say, let's all have some oysters? Why not take us all down to get some?" Defendant replied, "Very well, let's all have some." The party consisting of seven persons who thus accidentally met in front of the courthouse, one of whom was juror Worley, but of whose presence in the crowd at the time of the invitation defendant was not aware, immediately adjourned to the restaurant about one hundred feet distant which was open and lighted. The oysters were ordered by Holladay for the crowd, and they all sat down.

Afterwards, juror Griffin, who was not in the party when the invitation was given, came into the restaurant on the invitation of the keeper, and, when he got in the room where this party were seated, all the crowd except the defendant, or at least several of them invited Griffin to join with them in the oysters. Afterwards, another party came in and joined the crowd, without any invitation. They all sat chatting and cracking jokes in this public room, with open doors, until they had finished their oysters; when they arose; defendant paid the bill; they separated, and each went his own way. The case of Kennedy against Holladay was not mentioned, nor is it shown that the defendant had any conversation with either of the jurors about the case, or about anything else privately or publicly. The person who came in last and joined in eating the oysters was one L. O. Neider, a witness for the defendant.

The plaintiff introduced the affidavits of two witnesses, who state that the said Neider was sitting beside juror Griffin, and the said Neider was talking to him, with their heads close together, in a low tone of

voice; and also the affidavit of another witness, who testifies that on the night of the third of October, in a conversation the affiant had with Neider, he (Neider) said that the defendant would win the case, he thought, for he (Neider) had got an expression of the opinion of two of the jurors.

In order to discuss any of the grounds for new trial, based upon these affidavits, it must be assumed that the record is wrong in showing that the verdict was returned on the third of October; for in that case all the acts complained of were done either before the jury was impaneled, or after their verdict was returned; and it must be assumed that the verdict was returned at some time during the session of the court on the fourth of October, as is indicated by the affidavits.

In regard to these last affidavits in reference to the jurors, Griffin and Neider, it is perhaps only necessary to say that juror Griffin, in his affidavit, flatly denies the allegation that he and Neider put their heads close together, or conversed together in a low tone of voice, as alleged in the affidavits of Law and Sandman; avers that the case of Kennedy v. Holladay was not mentioned to him by said Neider, or mentioned at all by anybody during the time the parties were together, and his evidence is sustained by the affidavits of five others who were present. Griffin also deposes that no one ever talked to him about the case, or tried to influence his verdict at that or any other time. The affidavit as to an expression of opinion by two of the jurors to Neider was hearsay evidence, and incompetent to prove that fact; it nowhere appearing that Neider was in any way supporting the defense, or was in any way interested in the case himself or for defendant, or that he ever had any communication with defendant about the case, or sustained any other relation to him or the case than that of a disinterested and independent witness; whether material or not, or whether he was ever examined or not, does not appear; on this

evidence, the court could not find otherwise than it did, that there was nothing in these affidavits to authorize a new trial.

The same may be said in regard to the affidavits in regard to defendant's employment of Worley and his wife on the twenty-sixth of July, if they would come to his place of residence and business; this promise of employment, made before the said Worley was summoned as a juror in the case, when he had no knowledge of the existence of such a case, and when the defendant was under the impression that his case would not be tried at that term of the court, and had no reason to suspect that said Worley would be one of the jurors if tried, could not have been made with the intention of influencing him as a juror in the decision of the case. The affidavit of the juror shows that it had no influence, and there is nothing in this record to show that it did, or could have had any such influence.

This brings us to the consideration of the grounds mainly relied upon by appellant for a new trial, the consummation of the mule trade with Wernecke and the oyster treat. Besides the cases cited on each side by the learned counsel, we have examined many others. There is a line of authorities which maintain the old common-law rule, "That when a juror has been impaneled to try a cause, and, during the trial and before he has rendered his verdict, he shall be entertained by either of the parties at their expense and the verdict be in favor of the party so entertaining the juror, the verdict will be set aside. *Walker v. Walker*, 11 Ga. 203; *Walker's Ex'r v. Hunter*, 17 Ga 414, *loc. cit.*; *Sacramento Mining Co. v. Showers*, 6 Nev. 302, *loc. cit.*; *Vose v. Muller*, 36 N. W. Rep. (Neb.) 583. And there are *dicta* in other cases, which turned in part or in whole upon other grounds, asserting a doctrine as broad as the rule stated. Of this class *Ryan v. Harrow*, 27 Iowa, 494, may be cited. In nearly, if not all, of the

cases of this character, however, it will be found that the entertainment, whatever it was, was intentional upon the part of the successful suitor, and the court had before it the evidence in the case in which the verdict was set aside. The rigidity of this ancient rule seems to have been relaxed in England ; for in *Morris v. Vivian*, 10 Meeson & Welsby, 136, it was held, where two of the jury, during the progress of the trial, which lasted two days, dined and slept at the house of the prevailing suitor, that it was discretionary with the court whether the verdict should be set aside for that reason, and the court refused to set it aside—the verdict being for the right party.

In this country the weight of authority seems to be in line with the rule laid down by TOTTEN, J., in *Vaughn v. Dotson*, 2 Swan, 348, applicable to both the acts in question here. In that case, pending the trial, a juror, during the recess of the court, took a glass of soda and dined with the prevailing suitor at a hotel on his invitation, and at his expense. The learned judge, after citing the authorities, says: "The rule to be deduced from these and other cases seems to be that, if a party do an improper act with the design to bias and influence any of the jurors, their verdict in his favor will be set aside as a punishment to him, and no inquiry will be made whether the improper act prejudiced and tainted the verdict or not. The mere attempt to tamper with the jurors, and to corrupt them, shall have the effect to vitiate a verdict rendered in his favor. The rule is founded in public policy, the better to preserve the purity of trial by jury. But, if the act done was a mere accident or inadvertence without any improper design, and if it can be safely assumed that it had no improper influence upon the minds of the jurors in such case, there can be no just or reasonable ground to disturb the verdict." See *Eakin v. Canal Co.*, 4 Zabriskie, 538 ; *Koester v. Ottumwa*, 34 Iowa, 41 ; *Hilton v. Southwick*, 17 Maine, 303 ; *McCarty v.*

*McCarty*, 4 Richardson, 594; *Carlisle v. Sheldon*, 38 Vermont, 440; *Goodright v. McCausland*, 1 Yeates (Pa.) 372. This seems the more just and reasonable doctrine, and by it the facts in this case should be measured.

The meeting of the defendant and the two jurors at the oyster treat was accidental; neither of them was invited thereto by him ; the treat, except as to the two friends whom he only invited, was good naturedly forced upon him by the crowd, in which one of the jurors happened to be, but of whose presence he was not aware, and, when another came in and was boisterously invited by the crowd to join them, he would have appeared a very niggard to have refused to pay for the oysters they ate. No man with ordinary respect for himself would have refused this ordinary civility.

It is the practice in this state in civil cases to permit the jury to separate at the usual recesses of the court under a charge not to talk with any person in regard to the case, or permit others to talk with them, or in their presence, in regard to it. The sessions of the circuit court at the county seat in a small town or village is an important event in a rural district, and is made the occasion by many citizens far and near for assembling there on such occasion, for the purpose of hearing the proceedings of the court, meeting friends and transacting business, opportunities for which are afforded at such semi-annual gatherings, that might not offer on any other occasion. Under such circumstances jurors, witnesses and parties are thrown together and feel that so long as they keep themselves strictly within the charge of the court, say nothing about the case and do nothing calculated to influence the mind of a juror in regard thereto, they are at liberty to transact business with each other appertaining solely to their own affairs. While this is a fact well known to all who have attended sessions of the circuit court in country towns, the courts look with suspicion upon any communications

between parties to a suit and a juror impaneled to try it; and if such communication is had, and it appears that the parties talked about the suit, or the communication is not explained satisfactorily, it will, in itself, be ground for new trial; if when explained, however, it can be seen that in the communication nothing was said about the case, and nothing said or done for the purpose of influencing the mind of the juror, and the court cannot see from what was said or done, or from the verdict rendered by the jury, that such communication had any influence in directing the verdict, it will not be set aside on account thereof. Thompson on Trials, sec. 2559 ; *White v. Wood*, 8 Cushing, 413 ; *Borland v. Barrett*, 76 Va. 128.

" Where the verdict is strongly against the evidence, and this is accompanied by proof that the party  *  *  * has been seen in conversation with them after they were sworn, and he does not promptly account for the conversation," the verdict will be set aside. *Johnson v. Porter*, 2 Harrington ( Del.) 325.

While the defendant was guilty of great impropriety in consummating the trade for the mules with Wernecke after he had been summoned on the jury, there is nothing in the circumstances of the transaction when explained, inconsistent with his innocence of any attempt in so doing, to influence the juror in his favor. The transaction was not private ; nothing was said about the case on trial; five disinterested witnesses, experts in the value of mules, depose that the price given was the full value of the mules. In the transaction itself, nothing can be found calculated to prejudice the juror in favor of the defendant, but to the contrary effect; for in the consummation of the trade he got $15 less than he asked defendant for the mules, and, as he says, $15 less than he had ever asked for them before.

The remarks of the learned judge who delivered the opinion in the case of *Borland v. Barrett*, *supra*, are applicable to the facts in this case as disclosed by the

Kennedy v. Holladay.

affidavits; he says: "In all this class of cases, where application for a new trial is based on mere circumstances of suspicion arising out of the conduct of the party, the whole question is addressed very much to the sound discretion of the judge presiding at the trial, and that discretion an appellate court is not inclined to reverse unless the error is palpable." And the reason he gives is a sound one, "that the trial judge is acquainted with the jury, the parties and the surrounding circumstances, and, therefore, more competent to form a correct opinion on the subject than an appellate court could possibly be."

The great end and aim of all trials by jury is to obtain a true verdict upon the facts shown by the evidence in the case and a new trial is granted under the laws of this state, only when it can be seen that the losing party has a just cause of action or defense, and an improper verdict was rendered against him. Revised Statutes, 1879, section 3704, and the statute makes further provision that, "The supreme court shall not reverse the judgment of any court, unless it shall believe that error was committed by such court against the appellant materially affecting the merits of the action."

On the affidavits, the trial judge might well have found that the acts done by defendant were not done by him with any improper design, but were mere acts of inadvertence; acquainted with the parties and jurors and witnesses, with all the evidence given upon the trial of the case fresh in his memory, he was cognizant of the merits of the case, and could well determine whether the verdict was with the merits, and whether it could have been affected by any improper influence.

We are asked to reverse his judgment on these matters without any such knowledge, and without any of the evidence before us given upon the trial by which we could determine whether there was any merit in the plaintiff's case, or any evidence upon which a verdict for him could be sustained. This we cannot do. The

presumptions are all in favor of the correct action of the trial judge in refusing to grant the new trial; he had better opportunities of determining the question than we could possibly have, even if the evidence upon the trial was before us; without it, we cannot see that plaintiff had any merit in his case, or that the verdict could have been other than it was. Instead of bringing the evidence here to show merit, he points us to the fact that, before this, he had obtained a verdict from two juries. This could have no legal force, of course, because the evidence in those trials may have been entirely different from the evidence in the present one, and it loses all moral force in the light of the fact that the first verdict was set aside by the court in which it was tried, and the second by the court of appeals (*Kennedy v. Holladay*, 25 Mo. App. 503); and, if there is any merit in plaintiff's case, we fail to find it in the facts as they appear in that decision.

We cannot see that the circuit court committed error in refusing a new trial in this case, and the judgment is affirmed. *Morgan v. Rose*, 74 Mo. 318. All concur.