STATE OF MISSOURI ex informatione ISAAC B. KIMBRELL, Prosecuting Attorney, etc., Respondent, v. CHARLES CLARK, Appellant.

**Kansas City Court of Appeals, December 7, 1908.**

1. CONTEMPT OF COURT: Tampering With Jury: Eating At Same Table: Evidence. The evidence relating to an agent of a defendant eating dinner at the same table in a crowded lunchroom with jurors on the panel trying the defendant's case is reviewed, and held on the facts not to justify a conviction of contempt of court or even of impropriety.

2. ————: ————: Talking in Courtroom: Evidence. A defendant's agent is not guilty of contempt of court in talking with several of the jurors, witnesses and others, including the opposing lawyer, in a general conversation on the subject of hunting.

3. ————: ————: Refusing to Drink: Evidence. The fact that a juror .may invite defendant's agent to take a drink which invitation the agent neither sought nor accepted, does not render him blameworthy. ·

4. ————: ————: Playing Pool: Cigars: Evidence. Three jurors on. a panel trying a case against the defendant invited the latter's agent to play a game of pool. He accepted and beat them. Thereupon they paid the table keeper and the agent set up five cent cigars. *Held*, an impropriety, since the agent should not have accepted the invitation nor the jurors extended it; but on the evidence including the character of the jurors, it is held no ground to sustain a charge of contempt of court for tampering with the jury.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell*, Judge.

. REVERSED AND DEFENDANT DISCHARGED.

*John H. Lucas* for appellant.

(1) The information wholly fails to charge any offense against the appellant, and the judgment thereon is a nullity. R. S. 1899, sec. 1617; R. S. 1899, sec. 2045; Stuart v. People, 4 Ill. 395; In re Reese, 107 Fed. 942. (2) The evidence wholly fails to sustain any charge of

criminal contempt and the judgment is unsustained by any evidence. State v. Davis, 112 N. H. 349; Feacey v. Railroad, 162 Mo. 107; Kennedy v. Holliday, 105 Mo. 36.

*I. B. Kimbrell* and *W. H. Carmody* for respondent.

(1)  The court has the inherent power and jurisdiction to punish for contempts summarily under the common law, regardless of sections 1616 and 1617, Revised Statutes 1899.  State ex inf. v. Shepherd, 177 Mo. 224.

ELLISON, J.—The defendant was charged with contempt of a court; that is to say, the circuit court of Jackson county, sitting at Independence, the county seat.  He was convicted and sentenced to a punishment of three days in the county jail.  He thereupon appealed.  After an examination of the record presented here, we have concluded that his conviction was altogether unwarranted by the facts and circumstances developed in the investigation.

The contempt is alleged to have been committed in the course of the trial of Benjamin v. The Metropolitan Street Railway Company, and is charged to have consisted in the defendant eating lunch at the hotel in Independence at the same table with three of the twelve jurors sitting in the case—of afterwards, on the next day, playing games of pool with them and treating them to cigars—and of being engaged in conversation with them in the courthouse.

The witnesses examined in the investigation were the defendant, the three jurors, the attorneys engaged on either side of the cause, and the statement of the judge before whom the investigation was being held.  It appears that the trial in that case lasted as many as three days; that the parties were represented by their respective attorneys, the defendant here being an assistant to the defendant's attorney, sitting and advising with him during the trial and looking after the evidence and the witness.  That, perhaps on the first day, at the

noon adjournment, the judge, jurors, lawyers and witnesses went across the street to the hotel for lunch. The record does not state that all of the jurors and witnesses went there, but that is of no consequence. The dining room was pretty well crowded and was made up of several small tables. The judge sat at one of these and looking down towards the doorway he saw the defendant and the three jurors who figure in this controversy, at another. He got up from his seat and went to the table where the attorney for the defendant in the case on trial was seated and called his attention to his assistant being at the same table with three jurors and stated it was improper. At about the close of the meal the attorney spoke to the defendant, telling him of the judge's criticism, when the defendant stated that there was nothing wrong—that the dining room was filled and that the jurors had merely taken a seat at the table at which he was already seated.

The next day, at the noon adjournment, and after lunch, these jurors, thinking they had the time before court convened to play pool at a nearby place, started out of the hotel and got about twenty feet away when one of them on looking back saw defendant standing in front of the hotel and called to him to go along and play. He accepted and they played four games, the losers (the jurors) paying ten cents each to the proprietor for the games lost. Defendant did not lose, and it being the custom for the winner to pay for the cigars, he, on their way out of the pool hall, bought four five-cent cigars, one for each juror and one for himself. The jurors, fearing they would be late, hurried back to the courtroom.

Perhaps the next day, at least during the trial, these jurors and defendant, with a number of others, were seen in the courthouse in conversation. On another day, while the case was still pending, one of these jurors in passing defendant invited him to go along and take a drink. The defendant refused.

Putting aside for the moment defendant's playing

pool with the jurors and buying the cigars after the game, the case made out was not sufficient to justly cause even a suspicion against him. In the incident of his being at the same table with them, he was entirely blameless and so were the jurors. The dining room was crowded and the defendant, with a witness for the defense in that case, was already seated. He had no part in their sitting at that table. It was an innocent act of theirs without invitation from him. The judge, on observing them at the same table, seemed at once to have concluded it was a wrongful act on the part of the defendant. Whether it was wrongful on the part of either the defendant or the jurors entirely depended on how it came about. If it be true (and it is not disputed) that the jurors, not seeing a convenient place where they might be seated at a table except where defendant was sitting, took a seat at that table, without his invitation, design or foreknowledge, it is not easy to understand why any one should think either was guilty of an impropriety. When the attorney for the defense in that case told this defendant of the court's criticism, he explained the matter truthfully so far as this record shows. The attorney for the plaintiff in that case was offered by the court a continuance of the case, but he considered the matter as not justifying such a course and did not accept the offer.

The fact of defendant being seen in conversation with these jurors in the court house, when explained by the uncontradicted evidence, is equally trivial and was wholly harmless in intention and fact. To see an attorney or his assistant and a juror, off in some corner or byway, in secret conversation, is one thing, and seeing him with several jurors, witnesses and others, including the opposing lawyer, in general run of conversation on the subject of hunting, is quite another thing. The latter was what occurred in this case. The attorney for the plaintiff in the case on trial stated that he observed nothing in the defendant's conduct to excite his sus-

picion; that he had seen "him in the hallway here (court-house) on one or two occasions, but doing nothing more than possibly I might do myself, so far as that is concerned." When the court spoke to the attorneys for plaintiff and defendant about the matter of being seated at the same table, both of them thought it of too small consequence for a reprimand from the court.

In the incident of the invitation by the juror to defendant to take a drink, we see nothing which should attach blame to the latter. He did not seek the invitation, nor did he accept it.

This brings us to the only evidence in the case which tends in any degree to show blame on defendant. He should not have accepted the invitation of the jurors to play the games of pool, nor should they have extended it. It was an impropriety; though in even thus characterizing it we are possibly opposing the view of the Supreme Court in Feary v. Railroad, 162 Mo. 75, 106, where it was held not sufficient ground for a new trial that some of the members of the jury played cards with one of defendant's attorneys while the case was on trial. And so in Kennedy v. Holladay, 105 Mo. 24, the Supreme Court refused to order a new trial where it was shown that one of the parties to the case had conversed with jurors and had treated two or more of them to oysters; and had purchased two mules of a juror—all while the case was being tried. It was also shown that this party had promised employment to one of the jurors and his wife if they would come to his town. But it was shown that when he made the promise, the juror had not been summoned, though when summoned and while serving, the promise had not been recalled. Concerning the treat to oysters, it was shown that the circumstances causing the party to extend the invitation were accidental and not of his making, or for the accomplishment of any evil purpose. And that in all of the foregoing, nothing was said about the party's case, nor was there anything to show design or wrongful intent, or wrongful effect on

the minds of the jurors.   That case should be read in connection with this prosecution.   It is so much stronger against the party there charged than is this against this defendant as to put them out of comparison.   In this court a new trial was refused to be ordered where a party to the cause conversed with members of the jury and laughed at unamusing jokes of one of them [McGraw v. O'Neil, 123 Mo. App. 691.]

Here we have a game of pool instead of cards; and here we have an invitation given to an agent of a party by the jurors, while in the Kennedy case the invitation for oysters was given by the party himself.   In those instances no harm was found, while here the defendant, on much less evidence and suspicious appearance, is condemned to jail as a criminal.   We are asked to approve such sentence in what is essentially a criminal proceeding, when in those cases the Supreme Court thought such conduct not sufficiently blameworthy to justify a new trial in a civil suit.   To affirm this conviction would be to pronounce a judgment in the face of the express view of that court; and that too, in a case requiring much more convincing evidence than is necessary in a civil case.

The record shows another consideration to which it is proper to refer and which should be allowed due weight in forming a conclusion as to defendant's guilt. The jurors involved appear to be men of high character and of large business interests.   One is vice-president and general manager of several large lumber yards, incorporated with two hundred thousand dollars capital. He was acquainted with the attorney for the plaintiff in the case in which the jurors were sitting, and who had once been counsel for that company.   Another was president of a grain company with a capital of fifty thousand dollars.   And the other was a large contractor.   Their experience, good standing and repute would seem to be sufficient to suggest to any one of ordinary intelligence, especially one capable of being an assistant to the coun-

sel in an important trial, that they could not be corruptly approached, much less have their judgment swayed or warped by a bow, a smile, or a five-cent cigar given in the customary courtesy of the donor having vanquished them in a game of pool whereby they paid to the proprietor the cost of the games.

Furthermore, the record shows that at no time was the defendant with the jurors, or either of them alone. At no time did he approach them, or seek them out. At no time did he talk of the case on trial and at no time did either of them suppose or suspect he was endeavoring to influence them; and in no respect did what occurred in any wise affect their action on the case.

In forming our conclusions we have not been unmindful that among the basest of bad men there are corrupters of juries; and that, while some of them are ignorant and coarse in their methods, others are smart and artful; and that if distinction should be made among felons, the latter class deserve the severer punishment. Yet, a just indignation against such enemies of justice and social order ought not to be allowed to so far throw us off balance as to permit the enormity of an accusation to lead us into convicting one against whom there is no evidence of guilt.

The judgment will be reversed and the defendant discharged. The other judges concur.