245 S.W.2d 666 (1952)
RILEY
v.
ST. LOUIS PUBLIC SERVICE CO.
No. 28225.
St. Louis Court of Appeals, Missouri.
January 15, 1952.
Rehearing Denied February 15, 1952.
*668 Carroll J. Donohue, Salkey & Jones and L. F. Stephens, all of St. Louis, for defendant-appellant St. Louis Public Service Co.
Wilbur C. Schwartz and Harry M. James, both of St. Louis, (Joseph Nessenfeld, of St. Louis, of counsel), for (Plaintiff) Respondent.
BENNICK, Presiding Judge.
This is an action for damages for personal injuries sustained by plaintiff, Claudia M. Riley, while riding as a passenger on one of defendant St. Louis Public Service Company's Florissant buses.
Upon a trial to a jury, a verdict was returned in favor of plaintiff, and against defendant, for the sum of $12,500. The court conditioned the overruling of defendant's motion for a new trial upon plaintiff's remitting the sum of $6,000; and the remittitur being entered, the motion for a new trial was overruled and a new judgment entered for plaintiff for the sum of $6,500. Defendant thereupon gave notice of appeal, and by proper successive steps has caused the case to be transferred to this court for our review.
*669 The case was pleaded and submitted upon the charge that the operator of the bus had been guilty of negligence in opening the front door upon and against plaintiff so as to cause her right arm and shoulder to be wedged against the front of the bus.
The answer was a general denial, coupled with a plea that plaintiff had herself been guilty of negligence directly contributing to her injury in boarding a crowded bus when she could not get any further into the bus than upon the first step, and in then standing upon the step and placing her arm around an upright rod which was fastened to the step in such a position that her arm was caught between the rod and the door when the door was opened.
The accident occurred in the late afternoon of November 23, 1948.
Plaintiff, a woman 44 years of age at the time of the accident, was employed in downtown St. Louis, and at the conclusion of her day's work had gone to the corner of Ninth and Olive Streets to begin her transportation home. She was the last of the persons at the corner to board the bus, and because of its crowded condition in the evening rush hour was unable to get farther than upon the first step inside the vestibule, from which location she paid her fare and procured a transfer which would entitle her to change to a connecting line.
As soon as she was aboard the bus, the operator closed the door behind her and started the bus forward on its regular route. To secure herself while standing down upon the step, plaintiff hooked her arm around the rod in question, which extended upright at the edge of the steps and served as the support or connecting point for a similar rod leading out horizontally across the front of the vestibule. She remained in this position until the bus reached Ninth and Washington, three blocks to the north, where it was stopped to discharge such of the passengers as wished to alight at that point. As the door opened, plaintiff's arm was caught and wedged in between the door and the rod to which she had been holding. She immediately called out to the operator, as did three other passengers who witnessed the occurrence. After the passengers who desired to alight had left the bus by the exit door at the rear, the front door was closed and plaintiff's arm released, whereupon she stepped up into the vestibule and reported her injury to the operator, who, according to her testimony, paid no attention to her claim. She left the bus at Ninth and Franklin and transferred to a street car for the completion of her journey; and a few days later wrote the company of her accident after the severity of her injury had become apparent.
For its first point defendant argues that its motion for a directed verdict should have been sustained for the alleged lack of substantial evidence to support the charge of specific negligence upon which the case was pleaded and submitted. This was the charge, as will be recalled, that the operator of the bus had caused the door to be opened upon and against plaintiff so as to catch and wedge her arm between the door and the upright rod to which she was holding as she stood upon the step. Defendant argues that the most that plaintiff showed was that the door did in fact open and catch her arm, but that there was a total failure of proof that it was the operator who was responsible for the fact that the door was opened. On the contrary, defendant suggests that for all that the evidence actually showed, "the opening of the door could have been the result of a multitude of causesa defective mechanism, the action of a third party, or any of the myriad of possibilities that juries are permitted to conjecture about in general negligence cases", which this was not.
It may be conceded that plaintiff had no direct evidence to connect the operator with the opening of the door. Even though she had stated at one point in her examination that "he", the operator, opened the door, she later admitted on cross-examination that she had not actually seen him manipulate the mechanism that had caused the door to open, but had only assumed that he had done so in view of the fact that the bus was under his control. Consequently the question for our decision resolves itself into one of whether plaintiff was entitled to the benefit of circumstantial evidence in imposing responsibility upon the *670 operator; and, if so, whether the circumstances were sufficient to warrant the drawing of the inference necessary to make her case. There seems to be no contention but that if the operator did cause the door to open, he was guilty of negligence under the circumstances for which defendant would be liable.
As for the first of the points in inquiry, there is no doubt that the facts necessary to sustain a recovery in a civil case may be established by circumstantial evidence. The only qualification is that the evidence must rise above the statute of guesswork, speculation, and conjecture, and must point to the desired conclusion with such a degree of certainty as to make the particular conclusion more reasonable and probable than any other that might be drawn. This for the obvious reason that if the circumstances afford no more than an equal basis for two or more inconsistent conclusions as to the existence of the essential fact, then in that event the party having the burden of proof may not be said to have sustained his obligation. Bates v. Brown Shoe Co., 342 Mo. 411, 116 S.W.2d 31; Schoen v. Plaza Express Co., Mo.Sup., 206 S.W.2d 536; Bowers v. Columbia Terminals Co., Mo.App., 213 S.W.2d 663.
Nor do we have any apprehension about the sufficiency of the circumstances to warrant the inference that it was the act of the operator that caused the door to open. The bus was concededly in his charge, and all the evidence disclosed that it was being operated in the usual manner along its established route northwardly on Ninth Street. It had been stopped at the regular point at Olive Street for plaintiff to board it; and after she and the other passengers were aboard, it had been started forward on its course. It was then stopped in response to signal at the regular stopping point at Washington Avenue for certain of its passengers to alight. After it was stopped, both the front door and the rear exit door were opened, and those of the passengers who desired to alight proceeded to do so. Everything connected with the opening of the door was done in the ordinary way; and the only thing out of the ordinary was the fact that because of the situation in which she had been placed, plaintiff's arm was caught between the door and the rod. When the operator was immediately informed of the occurrence he did not disclaim responsibility for the opening of the door as he would have been expected to do if the door had come open by reason of some circumstance other than his own manipulation of the controls. Under all these circumstances it would be nothing but the rankest conjecture to suppose that the door might have come open by reason of something other than the act of the operator himself. On the contrary, the natural and logical conclusion is that it was he who had caused the door to open; and defendant's motion for a directed verdict was properly overruled. Dashman v. St. Louis Public Service Co., Mo.App., 239 S.W.2d 553.
In plaintiff's principal instruction No. 1 the jury were told that it was admitted that at the time in question plaintiff was a passenger on a "crowded" bus. Defendant denies any admission that the bus was crowded, and insists that the instruction was consequently erroneous in its assumption that any such admission had been made.
The language complained of was predicated upon an allegation in defendant's answer that whatever injuries plaintiff may have sustained were caused by her own carelessness and negligence directly contributing thereto "in boarding a crowded bus" when she could not get any farther inside the bus than upon the first step.
There is no doubt that fundamentally an allegation of fact in an answer is binding on the defendant and precludes him from afterwards maintaining a contrary or inconsistent position. Defendant argues, however, that the rule cannot apply where the particular allegation appears in an affirmative plea of contributory negligence which has been preceded, as in this case, by a general denial. Instead it contends that in such a situation the effect of the allegation in the affirmative defense is not to admit any facts previously denied, but only to charge that if such facts are found to be true, then the plaintiff was guilty of contributory negligence.
*671 Defendant is wrong in its contention. It has always been the rule that specific admissions and allegations of fact in an answer control and take precedence over a bare general denial. Nor can it be said that the plea of contributory negligence was based solely on the facts which plaintiff had set up in her petition, but for the truth of which defendant assumed no responsibility. While the language was equivocal as to the injuries plaintiff had sustained, it was not equivocal as to the fact that she had boarded a crowded bus. On the contrary, the defense was predicated on a definite and positive assertion of fact upon which defendant relied to convict plaintiff of contributory negligence. The allegation that the bus was crowded was a judicial admission on defendant's part of the truth of the fact so alleged; and its binding force was not affected by the fact that it was made in the course of the statement of an affirmative defense. Farmers & Traders Bank v. Kendrick, 341 Mo. 571, 108 S.W.2d 62; Fleming v. Joseph F. McMahon Contracting Corporation, Mo.App., 45 S.W.2d 952; Fledderman v. Manufacturers' Ry. Co., Mo.App., 254 S.W. 717.
The next point has to do with a claim of error in connection with the return of the verdict upon which judgment was rendered.
The verdict which was handed to the clerk to be read was a plaintiff's verdict for $12,500, which was signed by eleven jurors, including the foreman, one Shatrick, who signed in such capacity, with the other ten jurors affixing their signatures beneath his own. The jurors were thereupon polled, and the eleven who had signed declared that the verdict as read was in truth their verdict, following which it was received and recorded and judgment entered upon it. The jurors were then dismissed in the particular case and ordered to report back in the usual course to the central jury assignment room for such further jury service as they might be chosen to perform.
After court had receased for the day the clerk busied himself in collecting and arranging the papers in the case, and then for the first time discovered that there had actually been two verdicts returned, the one, the plaintiff's verdict upon which the jurors had been polled, and the other, a defendant's verdict which had been signed by the foreman alone, but of which the court was entirely unaware at the time the plaintiff's verdict had been received and recorded. The court was informed of the existence of such second verdict when court convened the following morning, and a direction was immediately given that the twelve jurors who had sat in the case be held intact and subject to call in the central jury assignment room. The next day the jurors were brought down to the division in which the case had been tried, and over defendant's objection were asked to give their explanation of why two verdicts had been returned. The explanation was that the defendant's verdict had been the result of misunderstanding and mistake on the part of the foreman, Shatrick, whereupon the court ordered that the same be voided and disregarded and judgment allowed to stand upon the plaintiff's verdict.
Defendant argues that the power of the trial court in altering, amending, or deleting the verdict of a jury is rigidly limited to matters of form and clerical errors, and never extends to matters of substance passed on by the jury and essential to the determination of the case on its merits; that the situation in the instant case fell within the latter category; that the return of the two inconsistent verdicts, the one for plaintiff and the other for defendant, rendered the action of the jury a nullity; that any correction to be made could only have been by the jury itself, and not by the court; and that the action of the court in undertaking to void the defendant's verdict and expunge it from the record constituted error for which the case should be retried to the end that a verdict may be returned reflecting the jurors' own declaration of their true intent.
We recognize the necessity that the verdict should have evidenced the jurors' own decision in the case. It appears, however, that this necessity was fully realized by the action taken by the court in the dilemma with which it found itself confronted.
It is to be borne in mind that the question before the court was not one of the *672 alteration or amendment of the verdict, but only of determining which of the two forms of verdict was actually the verdict of the jury. Even though the existence of the defendant's verdict was not then known, the complete answer to the question was nonetheless obtained when the jurors were polled as soon as the plaintiff's verdict was read, and the eleven who had signed confirmed the fact that it was in truth their verdict. It was not until then that the verdict was recorded for judgment to be entered upon it. Had the court known of the two verdicts at the time they were both returned, it would no doubt have immediately called the jurors' attention to the situation and inquired which of the two papers was their verdict, in which event the ultimate result would obviously have been the same. What harm was therefore occasioned defendant that it was not until the following morning that the jurors were called back to acknowledge their mistake? The court pursued the only logical course that was open to it under the circumstances; and the whole effect of its action was to make doubly sure, with due regard for the rights of every one concerned, that the verdict previously received and recorded was the verdict upon which the jury had actually agreed. Keyes v. Chicago, B. & Q. R. Co., 326 Mo. 236, 31 S.W.2d 50; Glaves v. Old Gem Catering Co., Mo.App., 18 S.W.2d 564; Hary v. Speer, 120 Mo.App. 556, 97 S.W. 228.
The next complaint is that the court erred in failing to declare a mistrial when plaintiff's trial attorney placed defendant's trial attorney on the witness stand for the alleged purpose of humiliating and degrading him and his client before the jury.
For the situation to be properly appraised and appreciated, one must know what it was that preceded and prompted the action of plaintiff's counsel in calling his opponent to the stand.
In the final moments of his case defendant's counsel asked leave of court to read to the jury an amendment to the petition which plaintiff's counsel had made the day before. This was to show that whereas the petition as originally filed had charged that the door of the bus had "closed" upon plaintiff's arm, the amendment had changed the charge to read that the door had "opened" upon and against her arm. As plaintiff suggests, the obvious purpose which counsel had in mind was to convey the impression that she had made a last minute change in her theory of the case, and thereby to give rise to an inference unfavorable to her.
Following this, plaintiff's counsel asked defendant's counsel to take the stand, and then undertook to interrogate him regarding a deposition which defendant had taken of plaintiff a year before the trial. In answer to objection, plaintiff's counsel stated that his purpose was to show that plaintiff had not changed her version of the facts, but had in fact testified in her deposition that the door had opened upon her arm. The court sustained the objection, but refused a mistrial; and there was no further request for a mistrial, although there was a later objection, which was sustained, when plaintiff's counsel again attempted to put defendant's counsel upon the stand in order to show that defendant had kept accurate and detailed records of its drivers, and could have produced the driver of the particular bus upon which plaintiff was a passenger at the time her injury was received.
Certainly the practice of calling one's opponent to the stand is not to be encouraged, and might well result in reversible error if such a thing should be permitted by the trial court under circumstances where there could be no reasonable pretense of justification, and where the obvious purpose would be to annoy the opponent and subject him to embarrassment in the presence of the jury. But in this case there was the element of justification growing out of the fact that defendant's counsel had himself created a situation where it seemed expedient to plaintiff's counsel to rehabilitate plaintiff with respect to the significance of the amendment of the petition. As it was, the court sustained all of defendant's objections except for the objection to the mere calling of counsel to the stand; and nothing that transpired in connection with the incident would warrant appellate interference with the exercise of the court's discretion in denying a mistrial.
*673 It is also claimed that the court erred in permitting plaintiff's counsel to make an improper, prejudicial, and inflammatory closing argument, and in refusing to declare a mistrial because of the same. There is also a complaint about the court's personal action in stating to defendant's counsel that he was "interrupting" in interposing an objection to the argument of his opponent.
By reason of the utter impossibility of regulating the course of argument with absolute precision, it has always been recognized that the matter is one to be left largely to the discretion of the trial court, reviewable only for abuse. Sparks v. Auslander, 353 Mo. 177, 182 S.W.2d 167; Burow v. Red Line Service, 343 Mo. 605, 122 S.W.2d 919; Willis v. Atchison, T. & S. F. Ry. Co., 352 Mo. 490, 178 S.W.2d 341. Generally speaking, however, it may be said to be the policy of the law to indulge a liberal latitude in argument (Prague v. Eddy, 358 Mo. 327, 214 S.W.2d 521), and especially so where the argument complained of is a fair retort to the preceding argument of opposing counsel, or is made in answer to some contention in the case. Nelson v. Heine Boiler Co., 323 Mo. 826, 20 S.W.2d 906; Rainier v. Quincy, O. & K. C. R. Co., Mo.Sup., 271 S.W. 500; Howard v. Thompson, Mo.App., 157 S.W.2d 780.
The latter observation has particular application to the matters about which complaint is made in the present instance.
The comment that the operator of the bus had not objected to plaintiff's presence as a passenger when she dropped her fare in the box was inspired by the charge that she had been guilty of contributory negligence in boarding a crowded bus. Argument that if there had been anything wrong in plaintiff's character, the jury would have heard of it, and that one's life became an open book when he brought a lawsuit against defendant, was all provoked by defendant's contention that plaintiff had suddenly changed her version of the facts, and that in making claim for a particular injury, she was trying to sell defendant "a bill of goods". The statement that "she's entitled to transportation when she goes home; don't give us policemen and marines, just give us adequate transportation to get home", was in answer to the argument of defendant's counsel that "if she stepped up on a crowded bushow many policemen and marines would the defendant have to have to keep people from crowding up on them; if she stepped up into this crowded bus and stood there in a dangerous position, that is contributory negligence, and there is nothing the defendant can do about it".
Defendant lays particular stress upon the action of the court in permitting plaintiff's counsel to comment upon its failure to produce the driver of the bus upon which plaintiff claimed to have been injured. Its contention is that the driver was as available to plaintiff as to defendant, and that the comment upon his nonproduction was consequently improper. The answer is that he was not equally available to plaintiff because of his employment by defendant and his relationship to the occurrence as the one whose negligence had inferentially produced the injury. Defendant was entitled to do its best to convince the jury that plaintiff had received no injury on the occasion in question, or that if she had, it operator had not been responsible for it, or that in any event he was no longer available as a witness; but by the same token plaintiff was entitled to call attention to the fact that the operator had not been called, and to urge to the jury, for whatever it was worth, that his absence was due to defendant's apprehension that his testimony, if given, would have been damaging to defendant.
The record indicates that no great importance should be attached to the court's admonition to defendant's counsel that he was "interrupting". An identical objection had just been overruled; and when, despite the court's ruling, defendant's counsel immediately renewed his objection, the court merely observed that he had already overruled the objection, and that counsel was "interrupting". The matter was one within the court's discretion in enforcing the proper progress in the case.
The last incident complained of is one involving juror Shatrick, who, it will be recalled, had been responsible for the misunderstanding about the verdict, and Dr.
*674 O. A. Ambrose, who had been called as a witness for plaintiff although the record discloses that he had examined plaintiff at the instance of defendant.
It appears from affidavits that at the noon recess during the second day of the trial, Shatrick happened to find himself in the elevator with Dr. Ambrose and commented to the doctor that his testimony had been very convincing. The doctor acknowledged his thanks, and added that he invariably tried to be fair in his testimony and to express himself in terms that the laity could understand. Later Shatrick suggested that the case was going to be difficult to decide, to which the doctor answered that he supposed it would be. According to one of the versions of what happened, Shatrick also inquired whether the doctor thought plaintiff was in very bad shape, to which the doctor replied that she had a separation of the clavicle, which he did not consider too severe, but which, as he had said on the stand, would cause her some discomfort in the shoulder.
The matter was brought to the attention of the court on motion for a new trial, and while the incident was unquestionably unfortunate, we cannot believe that it assumed such proportions as to have required the trial of the case anew. The occurrence seems more than anything else to have been merely due to Shatrick's lack of appreciation of the restraint that was to be imposed upon him as a juror, and not to have been attributable to any improper motive on his part. From his standpoint his conversation was apparently designed to be no more than the exchange of pleasantries with the doctor, and the latter was but doing his best to avoid the embarrassment in which he was placed without giving offense to one who had meant no offense himself. The doctor said nothing more to Shatrick than what he had previously testified to on the stand, and Shatrick therefore acquired no information that had not already come to him in the proper manner. The court obviously did not feel that the incident had in anywise affected the result; and in refusing to grant a new trial upon such ground there is nothing to indicate that the court's discretion was abused.
For its final point defendant argues that the verdict was excessive even after remittitur.
Plaintiff's principal injury consisted of a separation of the acromioclavicular joint of the right shoulder accompanied by bursitis. The separation was at the point where the collar bone joins the shoulder blade, and its existence was undisputed. Apparently the separation was caused when plaintiff struggled to free her arm after it was caught when the door was opened. The only real controversy was whether the bursitis shown in X-ray pictures taken three weeks after the accident could have been the product of the injury. Suffice it to say that in resolving the dispute upon this point, plaintiff is entitled to the most favorable view of the evidence. The condition of her shoulder is both painful and permanent.
In determining whether a verdict is excessive there is a vital distinction, which an appellate court is prompt to recognize, between its own position and that of the trial court. The distinction is, of course, that the appellate court can only review the amount of the verdict as a question of law presented on the cold record, while the trial court, for its part, has both the plaintiff and the medical witnesses before it, and is not only entitled to weigh the evidence, but can actually see for itself and draw its own conclusion as to what the extent of the injury appears to be. Because of the advantage which the trial court's position gives it in this respect, an appellate court in any event accords great weight to whatever is revealed regarding the trial court's viewpoint of the compensation to be awarded; and where, by ordering a remittitur, it has directly passed upon the question of the excessiveness of the verdict, the appellate court, while in no sense bound by its decision, is always most reluctant to interfere. Gieseking v. Litchfield & Madison Ry. Co., 344 Mo. 672, 127 S.W.2d 700; Wenzel v. St. Louis Public Service Co., 361 Mo. 448, 235 S.W.2d 312; Willis v. Atchison, T. & S. F. Ry. Co., supra; Orr v. Shell Oil Co., 352 Mo. 288, 177 S.W.2d 608; Todd v. Libby, McNeill & Libby, Mo.App., 110 S.W.2d 830; Kasperski v. Rainey, Mo.App., 135 S.W.2d 11.
*675 Having due regard for the principles which control the action of an appellate court in considering the question of the excessiveness of a verdict, we can see no basis, on the record before us, for any further interference at this stage of the proceeding.
It follows that the judgment rendered by the circuit court should be affirmed, and it is so ordered.
ANDERSON and GREEN, JJ., concur.