**Lois BERRY, et al.,
Plaintiffs-Appellants,**

v.

**Sara E. ALLGOOD, M.D., et al.,
Defendants-Respondents.**

**No. 65719.**

Supreme Court of Missouri,
En Banc.

June 19, 1984.

Richard L. Hughes, St. Louis, for plaintiffs-appellants.

Eugene K. Buckley, St. Louis, for defendants-respondents.

PER CURIAM.

The judgment is affirmed substantially for the reasons set forth by Judge Smith in his opinion for the Court of Appeals, Eastern District, copy of which is appended.

There is no conflict between the conclusions of the majority and the cases of *Kennedy v. Holladay*, 105 Mo. 24, 16 S.W. 688 (1891); and *McGraw v. O'Neil*, 123 Mo. App. 691, 101 S.W. 132 (1907), cited by the dissenting judge in certifying the case to us. Both of those cases hold that the trial judge properly exercised his discretion in determining that the contact with jurors there shown did not require new trial.

WELLIVER, HIGGINS, GUNN, BILLINGS, BLACKMAR and DONNELLY, JJ., concur.

RENDLEN, C.J., dissents in separate opinion filed.

RENDLEN, Chief Justice, dissenting.

It is difficult not to say the juror misconduct in this case requires a new trial. The facts are these: In a malpractice suit against five physicians, several of the defendants, including Doctors Murphy and Dorton, had testified. Their appearance in court had not only alerted the jurors as to who they were, but by taking the stand and testifying they re-enforced the jurors' knowledge of their presence, specifics of their background, and something of their personalities.

Five days of court ensued with repeated MAI 2.01 admonitions to the jurors not to comment on or discuss the case and explanations that the litigants were not permitted to talk with the jurors until completion of trial. These warnings are designed to guard against outside influence, but unfortunately the defendants Dr. Murphy and Dr. Dorton selected a place for lunch on this last day of trial (immediately before the time of final arguments) where certain of the jurors were present. While passing through the cafeteria line, the two defendants Murphy and Dorton came in close proximity to juror Phillip Hall. Recogniz-

ing the defendants, the juror engaged these litigant doctors in conversation. Mr. Hall said "hello" and inquired whether defendants knew his family physician, one Doctor Kistner. Defendants answered affirmatively. Mr. Hall then asked if they knew a Dr. Kinsella and again they answered affirmatively and Dr. Murphy added that Dr. Kinsella's father had been one of his teachers.

This episode was unknown to any except the participants until after the jury had returned its verdict. In the courtroom that Friday afternoon after the verdict was rendered, Mr. Eugene Buckley, attorney for defendants Murphy and Dorton, learned of the occurrence from Dr. Dorton. On the following Monday Mr. Buckley, by letter, informed the court of the incident. However, curative action could not be undertaken at that point by instruction or admonition to the jurors who had, of course, been released. Learning these facts, plaintiffs' counsel moved the verdict be set aside and new trial ordered. In my view it was incumbent on the court to, at the very least, inquire concerning the incident of juror misconduct and determine from the participants *all that transpired* and the extent of the prejudice resulting from this episode.

In *Printed Terry Finishing Co., Inc. v. City of Lebanon*, 247 Pa.Super. 277, 372 A.2d 460 (1977), the Pennsylvania court has made an excellent statement concerning situations such as that in the case at bar:

[C]ourts look with suspicion upon *any* communications between parties to the suit or their counsel with the jury impaneled to try it; and if such communication is had and *it appears* that a conversation was had about the suit, *or the communication is not explained satisfactorily*, it will, *in itself*, be ground for a new trial.

372 A.2d at 771, *quoting California Fruit Exchange v. Henry*, 89 F.Supp. 580, 588–89 (W.D.Pa.1950) (emphasis added).

The legal encyclopedia Corpus Juris Secundum makes these straightforward declarations concerning the matter:

Although misconduct of or affecting jurors does not vitiate a verdict if it is not of a substantial character ..., *where the misconduct is ... participated in by an interested person or party*, the verdict is usually held to be vitiated without a showing of prejudice.

89 C.J.S. *Trial* § 445, at 79 (1955) (emphasis added).

As a general rule the verdict will be vitiated by the fact that jurors during the trial, ... have conversed about the case with a party, ... *or have had familiar associations with interested persons.*

89 C.J.S. *Trial* § 457, at 82 (1955) (emphasis added).

Unfortunately, the trial court made no inquiry concerning the effect of this juror's conduct on the deliberations in this cause.[1] We can only speculate that the medically tinged conversation between the doctors who were parties and the juror—where one of the doctors volunteered that the physi-

---

1. The *Per Curiam* states both *Kennedy v. Holladay*, 105 Mo. 24, 16 S.W. 688 (1891), and *McGraw v. O'Neil*, 123 Mo.App. 691, 101 S.W. 132 (1907), "hold that the trial judge properly exercised his discretion in determining that the contact with jurors there shown did not require new trial." While this statement of the holding in both those cases is accurate, what the *Per Curiam* fails to explain is the *procedure* by which the trial court in each of those cases cited exercised discretion and arrived at its determination that the contacts did not require new trial.

In *Kennedy* the trial court received affidavits of several witnesses to the alleged improper communication between two jurors and the defendant and considered the affidavit of one of the jurors involved in the episode. The court in that case determined from these statements filed at the hearing on the motion for new trial that no new trial was required. The communication and apparent absence of prejudice had been explained.

Similarly, in *McGraw*, affidavits were filed by defendant in support of his motion for new trial and the plaintiff, who allegedly conversed with three or more jurors on the last day of trial, was put on the stand and examined. The motion was denied. As in *Kennedy*, the court of appeals affirmed the trial court's decision noting that the court had the parties before it and the evidence in hand when determining a new trial was not required.

cian-father of one of the doctors with whom the juror was personally familiar had been his teacher—did not color the case for this juror. It is only reasonable that the incident would provoke a favorable conclusion in the juror's mind regarding the professional reputation of the defendant doctor linked to his then revealed association with a respected physician personally known to the juror. For these reasons, I cannot agree the trial court properly exercised its discretion in determining the juror misconduct did not require a new trial. Most certainly a suitable inquiry of the incident should have been undertaken to determine if the taint could be dispelled.

## APPENDIX

[seal]

# In the Missouri Court of Appeals
# Eastern District

EN BANC

| | |
|---|---|
| LOIS BERRY and CHESTER BERRY, | ) No. 45410 |
| | ) |
| | ) Appeal from the Circuit Court of the |
| Plaintiffs-Appellants, | ) City of St. Louis |
| | ) |
| vs. | ) Hon. Daniel T. Tillman, Judge |
| | ) |
| | ) OPINION FILED: |
| SARA E. ALLGOOD, M.D., | ) |
| SANFORD GREENBERG, M.D., | ) January 24, 1984 |
| DOROTHY J. CLINE, M.D., | ) |
| JAMES P. MURPHY, M.D., | ) |
| ROBERT K. DORTON, M.D. and | ) |
| DEACONESS HOSPITAL, | ) |
| | ) |
| Defendants-Respondents. | ) |

This is an appeal from a defendants' verdict in a civil action for money damages for the death of appellants' adult son, Dennis Berry, based on a claim of medical malpractice. The issue on appeal is whether the trial court abused its discretion in denying plaintiffs' motion for a new trial based on one juror talking to the defendants during the course of the trial. The decision in division was to reverse and remand, one judge dissenting. Rehearing before an expanded panel was granted and we now affirm the judgment of the trial court.

Dennis Berry, son of plaintiffs, Lois and Chester Berry, had been hospitalized at Deaconess Hospital from November 13, 1978 to November 15, 1978, when he died. He had previously been seen in the hospital's emergency room on November 12 and next on November 13, 1978, at which time he was admitted into the hospital. He was treated either in the Deaconess Hospital Emergency Room or as an in-patient in Deaconess by the defendant doctors, Sara Allgood, Sanford Greenberg, Dorothy Cline, James Murphy and Robert Dorton. Plaintiffs alleged that the physician defend-

ants failed to properly diagnose and treat their son's diabetic ketoacidosis and directly and proximately caused his death.

The case was tried against all defendants. At the close of the plaintiffs' evidence the trial court directed a verdict in favor of Doctors Cline, Greenberg, Allgood and Deaconess Hospital. As to Doctors Murphy and Dorton, the case went to the jury. During the noon recess on Friday, those defendants went to lunch near the courthouse. When they got into the cafeteria line, juror Philip P. Hall was ahead of them. The cafeteria line backed up and defendants were stopped immediately behind Mr. Hall. Mr. Hall turned around and said "hello" and inquired whether defendants knew his family physician, Dr. Kistner. Defendants answered affirmatively. Mr. Hall then asked if they knew Dr. Kinsella and again they answered affirmatively and Dr. Murphy added that Dr. Kinsella's father had been one of his teachers. The cafeteria line then started moving and Mr. Hall went to a table in one section of the cafeteria and defendants went to another table at a different section of the cafeteria. Nothing was said by Mr. Hall or by defendants about the lawsuit.

Subsequently, the case was submitted to the jury. The jury returned a verdict in favor of defendants. After the verdict, defense counsel became aware of the noon meeting and notified the trial court by letter. It was stipulated at the hearing on the motion for new trial that the facts set forth in the letter were all the facts as defense counsel knew them. No other evidence was offered. The sole issue raised on appeal is that the trial court erred in failing to grant a new trial because of prejudicial misconduct arising from the conversation between Juror Hall and defendants.

There is no claim that the merits of, or the issues in, the case were discussed or that defendants or their counsel were responsible for or initiated the occurrence. Plaintiffs contend, however, that the conduct of defendants in answering Hall's questions established a personal bond between them and the juror thereby depriv-

ing plaintiffs of a fair trial by twelve impartial jurors. Plaintiffs refine this further to opine that acquaintanceship of defendants with doctors known by the juror could cause the juror to more favorably evaluate the competence, knowledge and skill of the defendants.

The test to be applied is stated as follows in *Sunset Acres Motel, Inc. v. Jacobs,* 336 S.W.2d 473 (Mo.1960) [1–8]:

"Parties and jurors should avoid all appearance of evil, and if any contact *motivated by improper design appears,* the jury should ordinarily be discharged or a new trial granted, regardless of the existence of actual prejudice. Accidental and casual contacts with jurors are of rather common occurrence and often unavoidable. If the contact has been *wholly innocent,* a mistrial should not ordinarily be granted unless it can reasonably be found that there was some improper influence upon the jury .... Where a juror, by some inquiry or voluntary statement has raised a question as to his impartiality, the question becomes essentially one of fact, and primarily this decision rests with the trial court." (Emphasis supplied)

Thereafter the court in discussing *Riley v. St. Louis Public Service Co.,* 245 S.W.2d 666 (Mo.App.1952), mentioned that that case involved the juror talking with an expert witness about some phases of the case while leaving the courtroom. The court referred to the following statement in *Riley, supra,* [13]:

"The occurrence seems more than anything else to have been merely due to Shatrick's lack of appreciation of the restraint that was to be imposed upon him as a juror, and not to have been attributable to any improper motive on his part. From his standpoint his conversation was apparently designed to be no more than the exchange of pleasantries with the doctor, and the latter was but doing his best to avoid the embarrassment in which he was placed without giving offense to one who had meant no offense himself. The doctor said nothing more

to Shatrick than what he had previously testified to on the stand, and Shatrick therefore acquired no information that had not already come to him in the proper manner. The court obviously did not feel that the incident had in anywise affected the result; and in refusing to grant a new trial upon such ground there is nothing to indicate that the court's discretion was abused."

Plaintiffs premise their request for reversal upon their conclusion that defendants bear the burden of establishing the absence of prejudice. That is true only after the trial court determines that in fact misconduct occurred. *Middleton v. Kansas City Public Service Co.*, 348 Mo. 107, 152 S.W.2d 154 (1941) [1–4]. Such a finding was not made by the trial court. In place of such a finding plaintiffs suggest this case involves misconduct as a matter of law because of violation by the juror of M.A.I. 2.01. M.A.I. 2.01 does not explicitly state that a juror may not talk to a lawyer or client, although such a restraint is implied. What it says is that the juror should not remain in the presence of anyone "who is *discussing the case* when the court is not in session." The result of such a discussion, the instruction says, might cause some outside influence or comment to influence a juror. M.A.I. 2.01 then states: *"For this reason,* the lawyers and their clients are not permitted to talk with you until the trial is completed." (Emphasis supplied) [1] We cannot conclude that conversation between a juror and a party is *per se* misconduct as a matter of law. To do so would be to ignore the clear language of *Sunset Acres Motel Inc. v. Jacobs, supra,* and *Riley v. St. Louis Public Service Co., supra.* It has been consistently and uniformly held in this state that the granting of a new trial on the grounds of juror misconduct lies within the sound discretion of the trial court. *Sunset Acres Motel Inc. v. Jacobs, supra,* [1–8]; *Kennedy v. Holladay,* 105 Mo. 24, 16 S.W. 688 (1891); *Boyle v. Bunting Hardware Co.,* 238 S.W. 155 (Mo.App.1922) [8]; *McGraw v. O'Neil,* 123 Mo.App. 691, 101 S.W. 132 (1907); *Middleton v. Kansas City Public Service Co.,* 348 Mo. 107, 152 S.W.2d 154 (1941) [5].

The conversation here had no connection with the case, was at most evidence of the juror's "lack of appreciation of the restraint that was to be imposed on him as a juror," and demonstrates no improper motive or design by anyone. It is far less serious on its face than that which occurred in either of the two cases cited where no misconduct or prejudice was found. Nor is it analogous to *Middleton v. Kansas City Public Service Co., supra,* relied upon by plaintiffs. There the trial court made an affirmative finding of misconduct, which was not made here. Secondly, the conduct of the juror there was characterized as an affirmative purpose to reject the evidence in the record and get information outside the record. We cannot so characterize the juror's conduct here. Because the trial court did not find misconduct, the burden rested upon plaintiffs to establish prejudice to them from the conversation between the juror and defendants. They have failed to do so. The prejudice which they advance is based solely on speculation, conjecture and suspicion without evidentiary base. A finding of prejudice under such circumstances is not permissible, certainly not by an appellate court. The trial court found neither misconduct nor prejudice and we find no abuse of its discretion.

It should be noted that the conduct of the juror was discovered by happenstance and reported immediately to the trial judge by defendants' attorney. Such action is to be lauded. This high-principled, honest and ethical attorney should be commended for his observance of Supreme Court Rule 4 [2] in this case and we so recognize.

Judgment affirmed.

---

1. The admonition given by the court at each recess was also couched in the terms "not to discuss this case with anyone or permit anyone to discuss it with you."

2. *See* especially Canon 7, EC 7–32.

| | |
|---|---|
| | /s/ Gerald M. Smith |
| | Gerald M. Smith, Judge |
| /s/ Robert G. Dowd | concurs in dissent |
| Robert G. Dowd, Chief Judge | |
| /s/ John J. Kelly, Jr. | concurs in dissent |
| John J. Kelly, Jr., Judge | |
| /s/ Joseph G. Stewart | concurs |
| Joseph G. Stewart, Judge | |
| /s/ Robert O. Snyder | concurs |
| Robert O. Snyder, Judge | |
| /s/ Robert E. Crist | concurs |
| Robert E. Crist, Judge | |
| /s/ Harold L. Satz | concurs |
| Harold L. Satz, Judge | |
| /s/ James A. Pudlowski | dissents in separate opinion |
| James A. Pudlowski, Judge | |
| /s/ Paul J. Simon | concurs in dissent |
| Paul J. Simon, Judge | |

## DISSENT

I respectfully dissent.

The Supreme Court in the seminal case on this subject clearly enunciated that:

It is the practice in this state, in civil cases to permit the jury to separate at the usual recesses of the court, under a charge not to talk with any person in regard to the case, or permit others to talk with them, or in their presence, in regard to it.

* * * the courts look with suspicion upon *any* communications between parties to a suit and a juror impaneled to try it; and if such communication is had, and it appears that the parties talked about the suit *or the communication is not explained satisfactorily, it will, in itself, be ground for new trial.* If, when explained, however, it can be seen that in the communication nothing was said about the case, and nothing said or done for the purpose of influencing the mind of the juror, and the court cannot see from what was said or done, or from the verdict rendered by the jury that such communication had any influence in directing the verdict, it will not be set aside on account thereof. (emphasis added). *Kennedy v. Holladay,* 105 Mo. 24, 16 S.W. 688, 691 (1891)

The appellant claimed in his motion for a new trial that the conversations were prejudicial. In *Kennedy,* as in this case, the same charge was made. But in *Kennedy,* extensive evidentiary testimonial affidavits of the party, jurors and witnesses to the conversation were submitted to the trial court and from the copious facts the trial court concluded that the conversations and business transactions did not pertain to the issues and were not prejudicial.

In *McGraw v. O'Neil,* 123 Mo.App. 691, 101 S.W. 132, 137 (1907) the court commented on proper conduct of litigants and attorneys in a civil suit and the action which the trial judge should effectuate.

It is the duty of litigants and their attorneys to refrain, while the trial is in progress, from seeking the companionship of jurors during the necessary adjournments and recesses. They should avoid even the appearance of evil, and, when it is brought to the attention of the trial judge that any person interested in the result of the cause on trial is attempting to court favor with jurors by any sort of attention, a *prompt* and *sufficient* rebuke should be administered, and should it appear that a party or his counsel with improper design has succeeded in bestowing favor on a juror, *though it consists of nothing more than social attention,* a verdict in favor of the offending party should be set aside. (emphasis added).

**80**

Contrary to these admonitions in *Kennedy* and *McGraw*, the trial court did not conduct any inquiry of the juror or jurors and the parties to determine the harmlessness of the conduct. In the cases relied on by the majority, each had hearings to discover if the communications were prejudicial. In fact in *Sunset Acres*, the meticulous trial judge, after being advised of the conversations, "painstakingly considered" the attitude of the juror while being questioned on the witness stand about the conversations and the matters of credibility which were involved. 336 S.W.2d 473, 480.

Shortly after *Kennedy*, in *Mattox v. United States*, 146 U.S. 140, 150, 13 S.Ct. 50, 53, 36 L.Ed. 917 (1892) the Supreme Court of the United States opined the standard when it said, "Private communications possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least, unless their harmlessness is made to appear."

From the paucity of the facts before us and without further hearing, we can only speculate that the medically tinged conversation between the doctors who were parties and the juror was harmless and nonprejudicial. From the singular affidavit, without more, we must conclude that the trial court abused its discretion. The importance of a hearing is to secure for all parties an assurance that the sanctity of the jury system is safe and that there is no unmistakable miscarriage of justice.

Because the majority opinion conflicts with *Kennedy v. Holladay* and *McGraw v. O'Neil*, this writer certifies that this case be transferred to the Supreme Court pursuant to Rule 83.01.

/s/ James A. Pudlowski
JAMES A. PUDLOWSKI, JUDGE