**Gayle A. KNOTHE, Appellant,**

v.

**Thomas L. BELCHER, Respondent.**

**No. WD 35942.**

Missouri Court of Appeals,
Western District.

March 19, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied April 30, 1985.

Application to Transfer Denied June 25, 1985.

James T. Buckley and Max E. Mitchell, Sedalia, for appellant.

James M. Yeretsky, Kansas City, for respondent.

Before KENNEDY, P.J., and DIXON and LOWENSTEIN, JJ.

KENNEDY, Presiding Judge.

The plaintiff had a verdict and judgment against defendant for damages for personal injuries suffered in a boating accident, for $5,000. Plaintiff appeals on the ground that the verdict was inadequate in amount and on the ground of alleged misconduct of the defendant and of the jury in conversing during the trial.

We reverse and remand the cause for trial on the issue of damages only.

It is sufficient for the purposes of our case to say, with respect to the circumstances of the boating accident, that the plaintiff was riding as a passenger in defendant's boat on the Lake of the Ozarks at 1:30 or 2:00 a.m. on August 3, 1981. Defendant was operating the boat. He crashed into a boat dock, causing the plaintiff's injuries.

Plaintiff's motion for a new trial included an allegation that the defendant Thomas Belcher had conversed with the jurors during a recess before counsel's arguments to the jury. The motion for a new trial was supported by an affidavit of Michael Arnold, one of the plaintiff's witnesses, to the effect that defendant Belcher was in the hall of the courthouse conversing with the jurors for four or five minutes. He heard "one or more jurors" talking to defendant about the construction of a new building. Defendant then returned to the courtroom and sat by his attorney.

Arnold was unable at that time to locate plaintiff's attorney and did not report the incident to him until three or four days later.

At the hearing on the motion for a new trial, the defendant filed his own brief affidavit which did not deny the conversation with the jurors but stated: "During my trial I didn't have any conversations relating to my case with any jurors at any time". Plaintiff asked for an evidentiary hearing on his new trial motion and the hearing was expressly denied by the trial court. The overruling of the motion for a new trial, after expressly denying an evidentiary hearing on the allegation of juror

and defendant misconduct, must be held to be reversible error.

It is true, as defendant reminds us, that contacts between parties or attorneys and jurors, although improper and to be avoided, are not held to be misconduct per se. *Berry v. Allgood,* 672 S.W.2d 74 (Mo. banc 1984). The criterion is thus stated in *Sunset Acres Motel, Inc. v. Jacobs,* 336 S.W.2d 473 (Mo.1960):

> Parties and jurors should avoid all appearance of evil, and if any contact motivated by improper design appears, the jury should ordinarily be discharged or a new trial granted, regardless of the existence of actual prejudice. Accidental and casual contacts with jurors are of rather common occurrence and often unavoidable. If the contact has been wholly innocent, a mistrial should not ordinarily be granted unless it can reasonably be found that there was some improper influence upon the jury.... Where a juror, by some inquiry or voluntary statement has raised a question as to his impartiality, the question becomes essentially one of fact, and primarily this decision rests with the trial court.

336 S.W.2d at 479.

■ This passage was quoted with approval in *Berry v. Allgood, supra,* 672 S.W.2d at 77 in an opinion of the Eastern District, approved by the Supreme Court on transfer. (*Allgood* is commended to attorneys, both for its majority and dissenting opinions, for its exposition of the principles involved and for practical suggestions for dealing with these incidents.)

In *Berry v. Allgood* it was held that the trial judge was within his discretion to find that the alleged defendant-juror conversation did not require a new trial, 672 S.W.2d at 74. It is significant in that case that the conversation between the defendants and the juror, and the circumstances of the conversation were rather fully explained in a letter by defense counsel to the court, which furnishes a sharp contrast to defendant's affidavit in this case with the unsatisfying conclusory statement: "During my trial I didn't have any conversations relat-

ing to my case with any jurors at any time."

It is significant also that in *Berry v. Allgood* the matter was submitted upon the letter and no other evidence was offered. In our case, on the other hand, an evidentiary hearing was requested by plaintiff and denied by the court. The trial court should have granted the evidentiary hearing in order that the content and circumstances of the conversation could be assessed for their possible influence upon the outcome of the case. Rule 78.05.

■ In some cases, we might remand the case for the limited purpose of an evidentiary hearing to explore the subject of the defendant's contact with the jurors. We elect not to do that, but rather to remand for a new trial, because of another serious problem. The second problem is the one presented by appellant's point of the inadequacy of the damages awarded by the verdict. Our reversal and remand rests upon the overruling of the motion without the evidentiary hearing requested by plaintiff, added to inadequacy of the damages awarded. We need not decide whether the damages are so inadequate as to require, standing alone, the granting of a new trial as against the trial court's denial thereof, see *Brown v. Moore,* 248 S.W.2d 553, 559 (Mo.1952), and *Grodsky v. Consolidated Bag Co.,* 324 Mo. 1067, 26 S.W.2d 618 (1930); *Fischer v. City of St. Louis,* 189 Mo. 567, 579, 88 S.W. 82, 85 (1905); *English v. Thrower,* 146 S.W.2d 667, 668 (Mo. App.1940). We will recite the evidence to show that the damages, if not so inadequate as to require a new trial, even against the trial court's denial thereof, still were near that level.

The following evidence was uncontroverted:

The plaintiff, as it was discovered, suffered mild compression fractures of the eighth and twelfth thoracic vertebrae. She also suffered capsular and muscular strains of the right shoulder.

Ambulance attendants took plaintiff to the Lake of the Ozarks Hospital at Cam-

denton. After two or three days she was transferred to Bothwell Hospital in Sedalia, where she was attended by her family physician, Dr. Alvin Lowe. She was required to lie flat on her back for two weeks. Her total hospital stay was 17 days. She was fitted with a Jewett brace before she left the hospital, which she wore "for three months solid". She could take it off after going to bed at night. After her release from the Bothwell Hospital she stayed at her mother's house for another month.

She consulted orthopedist Garth Russell, M.D., on November 25, 1981. At this time her back was almost completely rigid. She also suffered "adhesive capsulitis" of the right shoulder, "secondary to a capsular and muscular strain". This limited the motion in that joint by half. Dr. Russell prescribed hospital therapy and stretching exercises. Dr. Russell saw her again on April 12, 1982, at which time he released her to resume her normal activities.

The total medical and hospital expense totaled $4,004.38. Respondent says this figure included $406.00 for the fee of Dr. Russell for testifying in the case, but this was his total fee for services rendered. The record does not show how much is attributable to his testimony and for his examination in preparation therefor.

The plaintiff had been employed at Penney's. She actually had not worked at Penney's for some time before the accident on account of an earlier ankle injury, but she had recovered from that injury and was slated to return to work on August 4, the day after the accident. Her wages at Penney's amounted to $3.15 per hour and she had been working 20 hours per week. Lost wages during the period of disability totaled $1,638, according to plaintiff's brief—although by our calculations the lost wages amounted to $2,268, allowing $63 per week for 36 weeks.

Special damages therefore amounted at least to $5,642.38.

There was a good deal of pain and discomfort associated with the injuries plaintiff received, some of which persisted down to the time of trial and, according to the medical testimony, would continue into the indefinite future.

Plaintiff was unable to do the lifting required for her work at Penney's and she did not return to Penney's. She went to a trade school and learned the trade of a beauty operator. She was employed at that kind of work at the time of the trial.

It is clear from the above testimony that the $5,000 verdict did not even cover the plaintiff's special damages, and allowed nothing at all for pain and suffering. If it is not so inadequate as to require reversal at the appellate level (which, as noted before, we do not decide), it would certainly have justified the trial court's granting a new trial. We considered the evidence of damages and the amount awarded only in connection with the error related to the defendant-juror misconduct, and to show the distinct possibility of prejudice resulting therefrom.

For the error noted, the judgment with respect to the amount of damages is reversed and the cause is remanded for a new trial on the issue of damages only.

All concur.