EXECUTONE OF ST. LOUIS, INC.,
Plaintiff-Respondent,

v.

NORMANDY OSTEOPATHIC HOSPI-
TAL and C & D Battery,
Defendants-Appellants.

No. 51341.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 25, 1987.

George A. Dorsey, Robert L. Officer, Clayton, for defendants-appellants.

Richard A. Stockenberg, St. Louis, for plaintiff-respondent.

STEPHAN, Judge.

Normandy Osteopathic Hospital appeals from a judgment entered against it and in favor of Executone of St. Louis, Inc., in the aggregate amount of $82,658.94. The judgment was based upon a jury verdict of $56,733.00, together with prejudgment interest of $25,925.94, as computed by the trial court in accordance with a stipulation of the parties. We affirm the judgment in the amount of $77,658.94.

In February of 1979, Normandy Osteopathic Hospital entered into a contract with Executone of St. Louis for the purchase and installation of a telephone system for Normandy's hospital in Des Peres, Missouri. The telephone system, which included some three hundred telephones, was to replace a system previously installed by Southwestern Bell Telephone Company. The Executone system required batteries for its operation and a charger, to charge the batteries. The hospital, as required by the contract, provided a two hundred twenty volt alternating current line to power the charger which, in turn, provided the direct current needed by the batteries. Executone purchased the charger from C & D Battery Company. The battery charger was connected to Executone's computer equipment and was temporarily supported on wooden blocks in the hospital's telephone equipment room. After the Executone system became operational, Southwestern Bell employees started removing the Southwestern equipment from the premises. During this process, a Southwestern Bell employee placed a heavy met-

al cabinet lid next to the battery charger. When the lid touched the battery charger, the charger was apparently knocked off its wooden supports causing a short circuit which resulted in extensive damage to Executone's electronic telephone equipment. At Normandy's request, Executone repaired the damaged system and restored the hospital's telephone service.

The basic contract price of $210,000 was paid in full by Normandy Osteopathic. After the damage caused by the short circuit was repaired, Executone billed the hospital $35,633.59 which represented Executone's actual cost of completing the repairs. The amount did not include Executone's normal markup for overhead. The original bill was discounted, according to Executone's president, in the hope of getting additional business from Normandy Osteopathic Hospital. When this good will gesture bore no fruit and the hospital made no payment at all for the emergency repairs, Executone issued another bill at its regular rate which amounted to $56,793.14. When Normandy refused to pay, Executone sued on a theory of quantum meruit. In the same action Executone joined Southwestern Bell and C & D Battery Company as defendants alleging negligence on the part of Southwestern Bell and breach of warranty by C & D Battery with respect to the battery charger. Southwestern Bell settled for $5,000 before trial. Upon trial, the jury found in favor of C & D Battery Company on the breach of warranty action but against Normandy on the quantum meruit action.

Normandy raises three points: (1) that the trial court erred in failing to declare a mistrial after learning that the president of Executone and its attorney had participated in a conversation with one of the jurors during a recess, (2) that the instruction relating to damages was erroneous because it attempted to mix theories of quantum meruit and breach of warranty, and (3) the trial court erred in failing to reduce the verdict by the amount of the $5,000 received in settlement from Southwestern Bell Telephone.

■ Appellant's first claim of error is based upon the fact that James W. Burt,

president of Executone, and Executone's lawyer, Richard A. Stockenberg, engaged in a conversation with one of the jurors during a recess in the trial. According to unrefuted affidavits filed by Burt and Stockenberg, the conversation occurred outside of the courtroom on the sixth floor of the Civil Courts Building in the City of St. Louis. Mr. Burt emerged from the courtroom which was on the east side of the building and walked through the common area to the west side of the building to observe the view from the windows. Another man, whom Burt later learned to be juror Henry Carson, was standing at the windows; and the two began talking about the many recent changes in the St. Louis downtown area, particularly the renovation of Union Station which was visible from where they stood. After a minute or two, they were joined by plaintiff's attorney Stockenberg who joined in the conversation. Travel by train was discussed generally; nothing was mentioned about the case. Neither Burt nor Stockenberg suspected that Mr. Carson was a member of the jury until the conversation broke up after five to ten minutes and Mr. Carson started walking toward the room where the case was being tried. At that time, counsel for C & D Battery Co. asked Stockenberg if the man he had been talking to was a juror, Stockenberg responded that he did not know but suggested that the incident immediately be reported to the trial judge out of the presence of the jury. This was done, and a deputy sheriff was sent to the jury room with a description of the person in question. He returned with Mr. Carson, and a hearing was held on the record.

Under questioning by the judge, Mr. Carson confirmed that the conversation had occurred and that its subject matter was limited to the changes in the appearance of downtown St. Louis, particularly Union Station, and train travel in general. When asked whether the conversation would influence him "in any way," Mr. Carson responded, "Absolutely not." The attorneys for Normandy and C & D both declined the court's invitation to interrogate Mssrs. Carson, Stockenberg, and Burt, and both conceded that the conversation was not "inten-

tional misconduct" on the part of any of the participants. They also declined the suggestion that one of the two alternate jurors be substituted for Mr. Carson. Nevertheless, both moved for a mistrial. Under the circumstances of this case, we find no error in the trial court's denial of the motions.

■ The granting of a new trial on the grounds of jury misconduct lies within the sound discretion of the trial court. *Berry v. Allgood*, 672 S.W.2d 74, 78 (Mo. banc 1984). In *Berry*, the Missouri Supreme Court adopted the decision of this court holding that a conversation between a juror and defendants during noon recess did not entitle plaintiffs to a new trial. *Id.* This court held that where there was no improper motive or design by the litigants in engaging in the conversation and the case was not discussed, a mistrial does not follow when no prejudice resulted from the contact. *Id.* at 77.

Citing *Berry* and another recent case, this court said in *Cara Investment Company v. Purcell Tire and Rubber Company*, 721 S.W.2d 137, 138 (Mo.App.1987):

Contact between a juror and a party is not misconduct *per se*. *Knothe v. Belcher*, 691 S.W.2d 297, 299 (Mo.App.1985). Whether to grant a mistrial on the grounds of jury misconduct is a matter consigned to the discretion of the trial court. *Berry v. Allgood*, 672 S.W.2d 74, 78 (Mo. banc 1984). If the contact appears to be evilly motivated, mistrial follows without regard to prejudice. However, if the contact was wholly innocent, a mistrial does not follow when no prejudice resulted from the contact. *Berry*, 672 S.W.2d at 77.

In the present case, the trial court determined that there was no improper motive or prejudice involved in the contact. We find no abuse of discretion. We further note that by reason of appellant's rejection of the suggested curative action, i.e. substitution of an alternate juror for Mr. Carson prior to submission of the case to the jury, appellant should not now be heard to complain of the outcome. Cf. *Gardner v.*

*Turk*, 123 S.W.2d 158, 166 (Mo.1938). The point is denied.

In its second point, appellant asserts the trial court erred when it instructed the jury as follows:

If you find in favor of Plaintiff, then you must award Plaintiff the lesser of (1) the reasonable value of the goods furnished, or (2) such sum as you believe was the difference between the fair market value of the battery charger when Plaintiff discovered or should have discovered it was unfit and its fair market value had it been represented by Defendant C & D Battery Co., plus such sum as you believe will fairly and justly compensate Plaintiff for any other damage Plaintiff sustained as a direct result of the battery charger being unfit.

Appellant now claims that by combining two theories of recovery, quantum meruit (MAI 4.04) and breach of warranty (MAI 4.17), the instruction misstates the law in such a manner as to confuse the jury. Appellant also claims that the instruction was not supported by the evidence. Appellant did not object to the instruction at the instruction conference and, in its motion for new trial, complained only that there was no evidence to establish the reasonable value of the goods furnished.

Appellant's failure to complain to the trial court as to the form of the instruction would warrant our ignoring the first portion of appellant's point. As was stated in *Jackson v. Radtke*, 673 S.W.2d 40, 47 (Mo. App.1984), "an allegation of error on appeal which does not correspond to any point in the motion for new trial preserves nothing for appeal." A gratuitous examination of the instruction, however, discloses that it is neither confusing nor misleading. Executone was suing appellant in quantum meruit and C & D Battery for breach of warranty. Accordingly, the instruction set forth verbatim the core language of the appropriate MAIs and avoided any possibility of prejudice to appellant by providing that, if the verdict were for the plaintiff, the amount would be that which represented the "lesser" of the two theories of recovery. To the extent that the

combination of MAI 4.04 and 4.17 constituted a "deviation" from provisions of either, we perceive no prejudice to appellant and, hence, no error, particularly in light of appellant's failure to address any such claim to the trial court. See *Points v. Dzur*, 713 S.W.2d 634 (Mo.App.1986).

In the second portion of its challenge to the instruction, appellant simply states that the instruction was not supported by the evidence. Such a bare assertion fails to meet the requirement of Rule 84.04(d) that a point relied on state "wherein and why" the trial court erred in giving the instruction, i.e., what evidence was lacking. *Lewis v. Renner*, 676 S.W.2d 909, 911 (Mo.App. 1984). Appellant fails to tell us whether it challenges the sufficiency of the evidence to make a submissible case in quantum meruit or to support the amount of the award.

Viewed from either perspective the claim of error is without merit. The essence of an action in quantum meruit is a promise implied by law that a person requesting services and materials from another will pay just and reasonable compensation to such person supplying them. *Berra v. Bieg Plumbing Co., Inc.*, 584 S.W.2d 116, 118 (Mo.App.1979). In the instant case, it is undisputed that, when the newly installed telephone system was rendered inoperable by the short circuit, the assistant administrator of the hospital contacted Executone's president, Mr. Burt, and asked that the system be repaired as quickly as possible. Executone, under Mr. Burt's direction, responded promptly by making repairs and ordering and installing new equipment, with its employees working many hours of overtime.

As previously indicated, Executone's initial bill reflected its actual costs involved in returning the system to operation. When that was not paid, a larger bill was sent which was based on its "normal markup." This amount, according to Mr. Burt, included such "overhead" items as costs of administration, staff salaries, office rental, and the like. According to Mr. Burt, Executone's normal fees were "competitive" and the second bill for $56,793.14, reflected a "standard" markup. In view of such evidence, it is obvious that the instruction complained of had support both as to the essence of a claim in quantum meruit and the amount of the verdict. Cf. *Richard B. Curnow, M.D., Inc. v. Sloan*, 625 S.W.2d 605, 607 (Mo. banc 1981).

In its third point, appellant urges that the trial court erred in failing to reduce the verdict by $5,000, the amount of its settlement with Southwestern Bell Telephone Company. The fact but not the amount of the settlement was made known to the jury during the course of the trial, and the court instructed the jury that it was not to take into consideration the fact of the settlement in arriving at any verdict for the plaintiff. During the course of the instruction conference, counsel for all parties agreed that, in the event there was a verdict against the hospital or C & D Battery Co. or both, the trial court would reduce any award by the amount of the $5,000 settlement.

In its brief as well as in oral argument, Executone has, with commendable candor, conceded that the trial court overlooked the agreement when it failed to reduce the verdict by $5,000 and entered judgment based on the full amount of the verdict. It appears from the record, however, that the trial court computed the prejudgment interest on the basis of the verdict as reduced by the $5,000 settlement. Accordingly, we affirm the judgment, as modified, in the amount of $77,658.94.

GAERTNER, P.J., and SIMON, J., concur.